168 F.2d 513 (1948)
INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN & HELPERS OF AMERICA, LOCAL NO. 886, et al.
v.
QUICK CHARGE, Inc.
No. 3520.
Circuit Court of Appeals, Tenth Circuit.
April 26, 1948.
Rehearing Denied July 6, 1948.
David Previant, of Milwaukee, Wis. (Rutherford H. Brett, of Oklahoma City, Okl., on the brief), for appellants.
J. B. Dudley, of Oklahoma City, Okl. (Paul Dudley, of Oklahoma City, Okl., on the brief), for appellee.
Before PHILLIPS, BRATTON and HUXMAN, Circuit Judges.
HUXMAN, Circuit Judge.
This is an appeal from a judgment and sentence of the United States District Court for the Western District of Oklahoma, finding appellants guilty of civil contempt and jointly and separately fining them in the sum of $10,000.00, together with the costs of the proceeding, including an attorney's fee of $3,000.00, for the use and benefit of appellee, the Quick Charge, Inc., hereinafter referred to as Quick Charge. A rather detailed statement of facts is necessary to an understanding of the legal problems presented.
Quick Charge is a corporation engaged in the manufacture, sale and distribution of battery chargers, parts, equipment, and steam cleaning devices. It was at all times a solvent, going concern and was in no wise financially embarrassed. It operated what is known as an open shop. About February 1, 1946, a group representing Local Number 5 of the C. I. O. attempted to organize the employees as a unit of the C. I. O. These efforts were unsuccessful. Sometime in March, 1946, representatives of Local 886 of the American Federation of Labor[1] undertook a campaign to organize the employees as a unit of its organization. Sometime thereafter representatives of Local 886 represented to Quick Charge that more than fifty-one per cent of its employees had joined their organization *514 and desired that it be designated as the employees bargaining agent. After considerable discussions an election was ordered under the auspices of the National Labor Relations Board to determine the bargaining agent of the employees, if any. At the election held under the supervision of the National Labor Relations Board, a majority of the employees voted against participating in any labor organization. Before the election was held, Local 886 took the position that the unfair labor practices of Quick Charge had intimidated the employees and that no fair election could be held and requested that certain notices be posted, the exact nature of which is not necessary to set out herein. The day before the election, Quick Charge was advised by members of Local 886 that it would not be bound by the results of the election on account of the alleged unfair practices of Quick Charge, and that it was forwarding to the Department of Labor at Washington, D. C., a notice of the existence of a dispute and its intention to strike after a thirty-day period, as required by the Smith-Connally Act.[2] Still insisting that the company had interfered and that therefore the outcome of the election did not fairly reflect the will of the employees, Local 886 continued its efforts to negotiate a contract with the company. Immediately after the election, the company was again notified by Local 886 of its protest against the company's conduct prior to the election. About a week thereafter, the operations of the company were temporarily suspended because of an alleged shortage of necessary parts. When the company resumed operations, it called some former employees back to work, but did not call back any employees who had previously joined Local 886. Thereafter, other employees were hired but these were not selected from the former employees but were new employees, none of whom belonged to Local 886 or to a labor union. The rehiring of the employees was in the discretion of Quick Charge's superintendent, Mr. Butler. He had previously attended organizational meetings of the Union at which certain employees of the company had signed application cards for admission to the Union and had made payments on their initiation fees. He testified that he had seen certain of the employees wearing A. F. of L. buttons on their caps.
On May 13, after waiting the thirty-day period provided by the Smith-Connally Act the former employees of Quick Charge, who were members of Local 886, picketed the plant and premises of Quick Charge. The picketing was entirely peaceful and there is no claim that the injunction in question was authorized because of violence or threats of destruction of property.
In addition to picketing the Quick Charge plant and premises, appellants also made representations to other concerns in the city and out of the city with whom Quick Charge had business relations and contacts, that under Local 886's agreements with such organizations, they had agreed not to cross picket lines and that if they did they would picket their places of business.
On June 20, 1946, Quick Charge filed its original petition for reorganization under Chapter X of the Bankruptcy Act, 11 U. S.C.A. § 501 et seq. On that day, the petition was duly presented and approved by the court. A restraining order was entered containing the usual provisions found in such orders restraining and enjoining all creditors of the said debtor from instituting and prosecuting any suits or actions, at law or otherwise, against it and restraining the creditors and all persons, firms, corporations and associations, organized or unorganized, claiming and/or asserting any interest against the debtor, from interfering with said debtor in the possession, use and operation of its properties. Although the picketing was in full force at the time said order was issued, neither the individual appellants nor Local 886 were named in said order nor was a copy thereof served on them.
Thereafter, on the 24th day of September, 1946, an order was entered by the trial court directing appellants to show cause why they and each of them should not be adjudged guilty of civil contempt and fined therefor as prayed for in the application of Quick Charge for such an order. Appellants filed their response to the show *515 cause order in the form of a motion to dismiss on the grounds that the application failed to state a claim against them upon which a citation for contempt might issue, predicated upon the following grounds:
1. That the order of the court of June 20, 1946, and the continuing order on August 15, 1946, did not relate to nor embrace them or their activities.
2. That if said orders be construed so as to embrace them and their activities that they were void and illegal for the following reasons:
(a) That the court had no jurisdiction to issue the same because appellants were engaged in a labor dispute with Quick Charge and the court was without jurisdiction under the Norris-LaGuardia Act, 29 U.S.C.A. § 101 et seq., to issue an injunction in such a case.
(b) That the petition in bankruptcy was insufficient in law and in factual allegations to invoke the jurisdiction of the court.
A lengthy hearing was held at the conclusion of which the trial court found the appellants in contempt of its orders of June 20, 1946, and August 15, 1946, and entered judgment against them from which this appeal is taken.
The trial court found that there was no labor dispute in progress between appellants and Quick Charge. This finding is erroneous in light of the undisputed facts and the law applicable thereto. Local 886 and its members who were employees charged that Quick Charge was unfair in that it dominated and sought to interfere with its employees in the election which was called to select a bargaining representative, and that as a result thereof the election was unfair. They served notice that because of this they would refuse to abide by the result of the election and gave the statutory notice for going out on strike. After the election, Local 886 continued to seek bargaining representative rights for those employees who were members of Local 886. They also charged Quick Charge with unfair labor practices in discriminating against rehiring employee members of Local 886 after the shut down. That these accusations were made against Quick Charge by Local 886 and its members who formerly were employees, is without dispute in the record. That, under all the authorities, constituted a labor dispute.[3]
Furthermore, it is difficult to escape the conclusion that the sole purpose on the part of Quick Charge in filing the reorganization proceedings under Section 77B was to rid itself of the labor dispute with the Union. Quick Charge was a solvent, going concern. It had assets in excess of $285,000.00. Its total liabilities were less than $65,000.00. It had net earnings in the preceding eight months of more than $32,000.00. The only relief prayed for in the petition for reorganization was an adjustment of a secured indebtedness totaling $19,000.00, and some $31,000.00 in unsecured claims. There is no showing that there was any controversy with these creditors or prospective embarrassing legal proceedings. Alhtough the petition for reorganization was filed and approved June 20, 1946, up to the time of the argument of this case before us on March 8, 1948, no proposed plan of reorganization was filed.
The purpose of the Chandler Act was to afford companies in financial distress an opportunity to reorganize on a sound basis and thereby escape liquidation and extinction through bankruptcy or receivership proceedings.[4] It was not intended and may not be used as an avenue of escape by a company from the provisions of the *516 Norris-LaGuardia Act in a labor dispute with its employees.
But even if the proceeding in this case be construed as a genuine proceeding for financial reorganization under the Chandler Act, the injunction must still fail. There is nothing in the Norris-LaGuardia Act which exempts equity receiverships of any kind from its provisions. It prohibits injunctions in any case involving or growing out of any labor dispute. It provides that, "No court of the United States shall have jurisdiction to issue [such injunction]."[5]
In Anderson v. Bigelow, 9 Cir., 130 F.2d 460, it was held that the Norris-LaGuardia Act prohibiting injunctions in cases involving labor disputes was not inapplicable to a proceeding for an injunction merely because it involved a federal receivership.
In United States v. United Mine Workers, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884, the Supreme Court held that the Norris-LaGuardia Act did not apply to the United States as an employer. But both the majority and the special concurring opinions by Justice Frankfurter, and by Justices Black and Douglas make it clear that the Government as an employer is the only one exempted from its provisions.
The court relied in large part for its position that it had jurisdiction to issue the injunction on In re Cleveland & Sandusky Brewing Co., 11 F.Supp. 198, and Converse v. Highway Const. Co. of Ohio, 6 Cir., 107 F.2d 127. Neither of these two cases is in point or controlling. In the Cleveland case, the Brewing Company was in court under a reorganization proceeding and picketing was going on. The receiver, under the direction of the court, had in his possession a large quantity of brew which would be completely destroyed if it were not removed and processed. The receiver sought to remove this brew to prevent its destruction and the pickets forcibly and violently sought to prevent it. The court correctly enjoined them from interfering with the receiver's possession of this specific property. The court did not, however, hold that the picketing was unlawful nor did it enjoin such picketing. In the Converse case, the court specifically found that there was no labor dispute involved. An analysis of the facts in that case will clearly show that this finding was correct.
We, accordingly, conclude that a Federal Court lacks jurisdiction to issue an injunction either in ordinary equity receiverships or receiverships arising under the Chandler Act in cases involving labor disputes.
Reversed and remanded with directions to set aside the judgment, dissolve the injunction, and sustain the motion to dismiss.
PHILLIPS, Circuit judge, concurs in the result.
NOTES
[1] Herein referred to as Local 886.
[2] 50 U.S.C.A.Appendix, § 1508.
[3] Houston & North Texas Motor Freight Lines, Inc., v. Local No. 886, D.C., 24 F.Supp. 619; Yoerg Brewing Co. v. Brennan, D.C., 59 F.Supp. 625; American Chain § Cable Co. v. Truck Drivers and Helpers Union, D.C., 68 F.Supp. 54; Lauf v. E. G. Shinner & Co., 303 U.S. 323, 58 S.Ct. 578, 82 L.Ed. 872.
[4] Remington on Bankruptcy, 1947 Edition, Vol. 11, Par. 4461: "Good faith presupposes an honest intention to effect a reorganization together with a need for and possibility of effecting it. * * * Petition filed for purpose other than reorganization is not filed in good faith."

Par. 4473: "Good faith involves actual need for the relief afforded by the Act and the fact that the provisions of the Act are invoked for the express purpose of obtaining that relief and not for an ulterior purpose."
[5] 29 U.S.C.A. § 104.