**UNITED STATES of America, Plaintiff-Appellant,**

v.

**Robert D. MOORE, Branch Chairman, PATCO, Rocky Mountain Chapter, et al., Defendants-Appellees.**

**UNITED STATES of America, Plaintiff-Appellant,**

v.

**Clinton H. ABNET et al., Defendants-Appellees.**

**Nos. 224–70, 225–70.**

United States Court of Appeals, Tenth Circuit.

June 8, 1970.

* Of the Southern District of New York, sitting by designation.

Carl Eardley, Deputy Asst. Atty. Gen., Denver, Colo. (James L. Treece, U. S. Atty., with him on the brief) for appellant.

James J. Morrato, Denver, Colo., Ronald L. Goldman, Beverly Hills, Cal. (Erickson & Littell, Denver, Colo., with them on their brief) for appellee.

Before LEWIS, Chief Judge, and BREITENSTEIN and HICKEY, Circuit Judges.

HICKEY, Circuit Judge.

This matter presents the question of whether the district court abused its discretion when it granted the defendants' "Motion for Protective Orders and Stay of Administrative Action" on April 27, 1970. Upon granting the motion, the court issued the order here in controversy which stated in part as follows:

"It is therefore ordered, adjudged and decreed:

"1. That the indefinite suspensions of F.A.A. employees and defendants Rex B. Campbell, Gerald W. Phillips and Robert D. Moore, now in effect, shall be withdrawn by the F.A.A. and the said defendants return to pay status immediately.

"2. The removal of F.A.A. employee Joseph M. Schrodt effective April 21, 1970 shall be rescinded by the F.A.A. immediately.

"3. That F.A.A. shall take no further administrative actions, consisting of proposed suspensions or removals from the rolls or other sanctions against any F.A.A. employees who are defendants in these actions and subject to the Preliminary Injunctions issued by this Court, based upon the alleged work stoppage between March 25, 1970 and April 13, 1970.

"4. The F.A.A. shall not be precluded from taking or initiating any administrative actions in ordinary conduct of its affairs with respect to its employees in these actions apart from the provisions of the Preliminary Injunctions."

On April 28, the government filed its motion for a stay of the order pending appeal. This court, by order dated April 29th set the matter down for argument on the merits on May 7, 1970. We affirm.

For an adequate understanding of the problems presented by the appeal, a brief statement of the facts is necessary.

On March 30, 1970 the United States on behalf of the Federal Aviation Administration (F.A.A.) filed a complaint in the United States District Court for the District of Colorado naming as defendants seventeen individual air traffic controllers, and the Professional Air Traffic Controllers Organization (PATCO). The complaint charged that on March 25, 1970, a large number of air traffic controllers absented themselves

from their work thereby engaging in an illegal strike against the air traffic control system thereby disrupting air traffic throughout the nation resulting in immediate and irreparable damage to the United States of America.

The F.A.A. sought and received a temporary restraining order which prohibited PATCO and the individual defendants from engaging in or continuing or encouraging the strike; directed the individual defendants to return to work; and directed both the individual defendants and PATCO to take such steps as were necessary to have other members of PATCO resume their normal employment duties.

On April 6, 1970 the United States on behalf of the F.A.A. commenced a separate civil action naming 103 additional individual air traffic controllers as defendants. The allegations in this action were identical to the allegations contained in the previous action and the F.A.A. secured a similar temporary restraining order directed at these defendants.

Subsequently the temporary restraining orders were continued for an additional period of time to enable plaintiff to secure service of process upon the defendants named in the action. The two civil actions were then combined and upon effectively completing the service of process and with the consent of the defendants served, the temporary restraining orders previously issued were converted into a preliminary injunction. An answer, together with a counterclaim, was filed by the defendants and the matter is now at issue before the district court.

During the time the civil actions were being filed in the district court, the F.A.A. served notice of its intention to impose sanctions upon many of the defendants for their activities in connection with the alleged strike. The proposed sanctions included permanent removal from employment and suspensions from duty either for a set period or an indefinite period of time. Other sanctions were actually imposed upon the defendants, including the withholding of pay for the period of each defendant's absence from work.

Following their return to work after the issuance of the preliminary injunction by the court,[1] the F.A.A. commenced administrative action to carry out the proposed removal and suspension of the various defendants. The basis of the proposed agency action was the charge that these individuals had engaged in and participated in an illegal strike against the government of the United States in violation of 5 U.S.C. § 7311 and that they had failed to comply with an order issued by the United States District Court for the District of Columbia in a separate action.

Effective April 20, 1970, several defendants were placed in a status of indefinite suspension, a non-pay status, by virtue of the administrative action. At least one defendant was permanently removed as an employee of the F.A.A.

The defendants then moved the court for Protective Orders and a Stay of Administrative Action. The motion was filed and argued on April 24, 1970. The court granted the motion and as above noted, entered an order directing that the indefinite suspensions and removal of the individual defendants be withdrawn and that the F.A.A. take no further administrative action, consisting of proposed suspensions or removal or other sanctions against any F.A.A. employees who were defendants in the action subject to the preliminary injunctions issued by the court.

■ Although this order may not be a final order for purposes of 28 U.S.C. §

---

1. We note that we have been informed that certain of the defendants may not have returned to work as directed by the restraining orders and preliminary injunctions. However this facet of the case is not now before the Court. Criminal contempt charges have been brought against certain of the defendants and are now pending in the Federal District Court.

1291, it clearly falls within § 1292(a)(1) of that title which allows the courts of appeals to review interlocutory orders which grant or deny issuance of certain injunctions. Since this order effectively enjoins the F.A.A. from taking certain action, we conclude we have jurisdiction to hear this appeal.

The issue raised by the government is whether the order of the district court was an abuse of discretion. The government's argument in this regard is based upon several points.

Initially the government argues that a motion for interlocutory relief is not granted automatically, and that to be granted such relief the defendant should be required to satisfy the court that: (a) it is likely to prevail on the merits; (b) without the relief it will be irreparably injured; (c) that the issuance of the stay would not substantially harm other parties; and (d) that the public interest would be aided by the issuance of such a stay. Virginia Petroleum Jobbers Ass'n v. Federal Power Comm., 104 U.S.App.D.C. 106, 259 F.2d 921, 925 (1958); Belcher v. Birmingham Trust Nat. Bank, 395 F.2d 685 (5th Cir. 1968). Unlike Associated Securities Corp. v. Securities & Exchange Comm., 283 F.2d 773 (10th Cir. 1960), the matter here before us is not the order of an administrative agency but is the order of a trial court, entered in aid of its jurisdiction in enforcing a prior preliminary injunction, the merits of which are not involved in this appeal.

The federal courts have power to issue such writs and orders as are necessary to protect their jurisdiction. Title 28 U.S.C. § 1651 of the United States reads as follows:

"(a) The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."

In re Quick Charge, Inc., 69 F.Supp. 961, 969 (D. Okl. 1947), reversed on other grounds, International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, Local No. 886 v. Quick Charge, Inc., 168 F.2d 513 (10th Cir. 1948), the court said:

"It is [a fundamental principle] that a court of equity has the inherent power to issue such orders and injunctions that may be necessary to prevent defeat or impairment of its jurisdiction. If these fundamental principles were not so inherent in the court, such a court would indeed be a feeble arm of government and for all practical purposes would be a nullity."

The government further argues that the district court abused its discretion by ordering that the F.A.A. abstain from censuring the named employee-defendants because the defendants have not exhausted their administrative remedies. The order herein considered did not come into existence as the result of administrative procedure, but is the act of a trial court protecting its prior determination which was in the nature of a mandate to return to work.

The order appealed from does enjoin the F.A.A. from taking any administrative action against named defendants for their participation in the work slowdown. However, upon the conclusion of the initial lawsuit in the district court, the F.A.A. will be free to impose against the defendants whatever sanctions are authorized by the applicable administrative regulations.

The purpose and effect of the court's order is limited to a restoration of the "status quo" that existed prior to March 25, 1970, pending determination of the issues contained in the civil actions seeking a permanent injunction. The action taken by the district court has precedent to support it.

In Brotherhood of Locomotive Engineers et al. v. Missouri-Kansas-Texas R. Co., Inc., 363 U.S. 528, 80 S.Ct. 1326, 4 L.Ed.2d 1379 (1960), the district court's

similar action was upheld by the Supreme Court in the following language:

> "If the district court is free to exercise the typical powers of a court of equity, it has the power to impose conditions requiring maintenance of the *status quo*. Conditions of this nature traditionally may be made the price of relief when the injunctive powers of the court are invoked and the conditions are necessary to do justice between the parties. * * * '[The court] will avoid * * * injury so far as may be, by attaching conditions to the award * * *.' Yakus v. United States, 321 U.S. 414, 440, 64 S.Ct. 660, 674, 88 L.Ed. 834. '[I]t is the duty of a court of equity granting injunctive relief to do so upon conditions that will protect all * * * whose interests the injunction may affect.' Inland Steel Co. v. United States, 306 U.S. 153, 157, 59 S.Ct. 415, 417, 83 L.Ed. 557. Since the power to condition relief is essential to ensure that extraordinary equitable remedies will not become the engines of injustice, it would require the clearest legislative direction to justify the truncation of that power." Supra, 363 U.S. at 531, 532, 80 S.Ct. at 1329.

Because of the nature of the order appealed from, cases concerning issuance of various preliminary injunctions by district court judges are persuasive. Thus, in Flight Engineers' Inter. Ass'n. etc. v. American Airlines, Inc., 303 F.2d 5 (5th Cir. 1962), it was held that the fact that a hearing may ultimately result in a contrary decision does not deprive the district court of its power to grant interim preliminary relief to enable serious judicial controversy to be settled in an orderly fashion.

> "[The court may] preserve the status quo pending a judicious, calm and orderly judicial determination of this judiciable problem. That is the classic office of a preliminary injunction. So much so is it that on review of such an interlocutory order, we do not examine into the merits as such. The probable merits are looked to only inso-

far as they bear on the question whether the trial court abused its discretion in granting interim relief". *Supra*, 303 F.2d at 11.

The district court was well within its authority when it imposed conditions resulting in the restoration and preservation of the status quo pending determination of the issues presented by the complaint which seeks the issuance of a permanent injunction.

The order of the district court was in aid of its jurisdiction over the parties and subject matter of the appellant's complaint. The court had jurisdiction over the appellees named in the complaint. The district court was vested with the authority to determine whether the appellees were engaged in an illegal strike. Even though the parties apparently agreed to the issuance of a preliminary injunction following service of the temporary restraining order, a determination has not been made that the strike, or work slow-down, was an illegal strike against the government. The effect of the preliminary injunction was to order the defendants back to work pending determination of the complaint brought by the F.A.A. The action of the F.A.A. in indefinitely suspending certain defendants and removing others has the effect of placing the cart before the horse, thereby circumventing the orderly process chosen by them to determine the real issues.

We therefore find that the district court was acting within powers granted to it by Title 28 U.S.C. § 1651 (a), to maintain jurisdiction over the parties involved in the lawsuit, and restore the status quo in aid of its jurisdiction. The court granted the order to effect an orderly and equitable disposition of the lawsuit. Accordingly, we find that the district court did not abuse its discretion granting the stay.

Affirmed.

LEWIS, Chief Judge (concurring).

I concur. It appears to me the United States is in no tenable position to assert

that the action of the district court violated the doctrine of separation of powers. The government chose to invoke the judicial power as an aid to executive function, seeking and obtaining a temporary restraining order later merged, by agreement, into a preliminary injunction on representation of employee action amounting to an illegal strike. The United States still persists in seeking a judicial determination in this action that the employee action was illegal and asks for a permanent injunction based on such contention of illegality. The contention has been consistently opposed both in law and fact by the subject employees and the ultimate issue is unresolved and pending. And yet, when the mandate of the judicial power was used effectively to bring the employees back to work, the agency promptly applied stringent administrative discipline to the subject employees premised on an agency executive determination of the very issue that the court now has before it. To me, such action can only amount to an attempt to turn the judiciary on and off like a light globe to suit the whims of the agency. The trial court had every jurisdictional and discretionary right to protect the integrity of the judicial issue and its order.

I agree with my Brother Breitenstein that practicality may indicate that the administrative process may now best serve to determine both the individual rights of the involved employees and also the initial determination of whether an illegal strike did occur. But if this be so, the government should seek to have the preliminary injunction dissolved as having served its purpose and should withdraw its petition for a permanent injunction.

BREITENSTEIN, Circuit Judge (dissenting).

I respectfully dissent. In my opinion the district court abused its discretion and violated the principle of separation of powers when it issued the protective order forbidding the FAA to take administrative disciplinary action against certain of its employees.

Discharge, suspension, and other matters relating to their personnel are functions entrusted to federal administrative agencies. Judicial review of actions pertaining thereto is limited to consideration of whether the applicable procedures were followed and whether the action taken was arbitrary or capricious. See 5 U.S.C. § 7501; McGhee v. Johnson, 10 Cir., 420 F.2d 445, 447; Bishop v. McKee, 10 Cir., 400 F.2d 87, 88; Meehan v. Macy, 129 U.S.App.D.C. 217, 392 F.2d 822, 830; and Mancilla v. United States, 9 Cir., 382 F.2d 269, 270, cert denied 390 U.S. 982, 88 S.Ct. 1104, 19 L.Ed.2d 1280.

No precedent of which I am aware authorizes the federal judiciary to enjoin disciplinary action by the federal executive branch or one of its agencies. The object of separation of powers "is basic and vital," O'Donoghue v. United States, 289 U.S. 516, 530, 53 S.Ct. 740, 77 L.Ed. 1356, and "deeply rooted in the constitutional divisions of authority in our system of Government," Perkins v. Lukens Steel Co., 310 U.S. 113, 132, 60 S.Ct. 869, 879, 84 L.Ed. 1108. See also Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579 and especially concurring opinion of Justice Frankfurter, 593–595, 72 S.Ct. 863, 96 L.Ed. 1153. Judicial interference with ordinary executive duties will produce nothing but mischief. Decatur v. Paulding, 14 Pet. 497, 516, 39 U.S. 497, 516, 10 L.Ed. 559.

The majority hold that the protective order effected a permissible restoration and maintenance of the status quo and was issued in aid of the district court's jurisdiction as authorized by 28 U.S.C. § 1651. These reasons, considered either separately or collectively, do not warrant the judicial encroachment on executive powers which results from the protective order.

I find nothing in the decision in Brotherhood of Locomotive Engineers v. Missouri-Kansas-Texas Railroad Co., 363 U.S. 528, 80 S.Ct. 1326, 4 L.Ed.2d 1379, that is either controlling or persuasive. First, neither that case, nor

any upon which it relies, related to a federal court injunction against the exercise of federal executive discretion. The issue of separation of powers was simply not present. Second, the rationale of Locomotive Engineers reveals its inapplicability to the present case. The Court there said, "the power to condition [injunctive] relief is essential to ensure that extraordinary equitable remedies will not become the engines of injustice * * *." 363 U.S. at 532, 80 S.Ct. at 1329. Accordingly, the Court held that restoration or maintenance of the status quo is a proper tool where the granting of equitable relief at the behest of one party would occasion grave injustice to the other. We have no such situation. The pertinent aspects of the status quo are (1) the defendants were employees of FAA, and (2) FAA had the power to discipline its employees. An injunction against collective actions of the defendants does not of itself subject any of them to any disciplinary action. The power of the FAA to discipline its employees in no way depends on the equitable relief which it requested from the court. In short, there is no relationship, as there was in Locomotive Engineers, between the equitable relief requested and the situation to which the protective order is directed.

The majority justify the order as one issued in aid of the district court's jurisdiction. In ordinary circumstances, federal courts have both inherent and statutory power to issue orders to ensure that their lawful orders are carried out and obeyed. 28 U.S.C. § 1651. See Faubus v. United States, 8 Cir., 254 F.2d 797, cert. denied 358 U.S. 829, 79 S.Ct. 49, 3 L.Ed.2d 68, and Mississippi Valley Barge Line Co. v. United States, E.D.Mo., 273 F.Supp. 1, affirmed Osbourne v. Mississippi Valley Barge Line Co., 389 U.S. 579, 88 S.Ct. 692, 19 L.Ed.2d 779. See also Federal Trade Commission v. Dean Foods Co., 384 U.S. 597, 86 S.Ct. 1738, 16 L.Ed.2d 802. Determination of the need for the order under review to protect the court's jurisdiction requires consideration of the preliminary injunctions which the order seeks to protect.

The preliminary injunctions enjoined the defendants from "continuing, encouraging, ordering, aiding, engaging or taking any part in" any work stoppage, from interfering with the movement of air traffic, and from taking any action which would interfere with the court's jurisdiction. These mandates were obeyed when the various defendants returned to work. The disciplinary procedure contemplated by FAA will not bring the affected defendants into a state of noncompliance with the preliminary injunctions. Terminated or suspended employees will not be engaging in a collective work stoppage. Their failure to work will result from FAA, not their own, action. In my opinion protection of certain employees against discipline is not needed to ensure compliance with the preliminary injunctions.

Even if the effect of the preliminary injunctions was to get the men "back to work," the FAA disciplinary actions will not adversely affect the integrity of the injunctions. Their purpose was to halt the work stoppage which impeded air traffic. That purpose was achieved and air traffic has returned to normal. The proposed action of FAA will not undermine the accomplishment of that purpose. Nothing is shown to indicate that it will create another air transportation crisis. The FAA plans to exact sanctions, where appropriate, which will not hamper the operations of the air traffic control facilities. The proposed disciplinary action will not impair the effect of the preliminary injunctions or any other action which the district court may take on the issues of whether the work stoppage was an illegal strike which should be permanently enjoined.

The termination or suspension of various defendants will not affect the court's jurisdiction over either them, their co-defendants, or the subject matter. The theory of the defendants seems to be that judicial determination of participation in the work stoppage must precede administrative disciplinary action.

In view of the executive discretion in personnel matters, I am not persuaded. I agree with the government that the 100 or more individual situations should be initially filtered through the administrative process with court review of arbitrary or capricious action.

My associates say that the FAA disciplinary action "has the effect of placing the cart before the horse" and circumvents the orderly process which the FAA chose to determine the real issues. This position assumes that the imposition of discipline and the lawsuits involve identical issues and that, therefore, the former must await decision of the latter. I do not agree. The issue in the lawsuits is whether there was an illegal strike. The resolution of this issue will not foreclose the right of FAA to impose disciplinary sanctions subject to limited court review. A judicial decision that the work stoppage was not an illegal strike will have no effect on the power or right of FAA to impose such sanctions as it may deem necessary in the interests of public safety and employee morale, i. e., the "efficiency of the service." See 5 U. S.C. § 7501 and Bishop v. McKee, 10 Cir., 400 F.2d 87, 88. It is not a question of the cart before the horse because there are two different horses and two different carts.

The defendants have made no attempt to show that they are likely to prevail on the merits. Irreparable injury has not been established. There is no claim that the protective orders are needed to prevent substantial harm to other interested persons or to the public interest. These conditions should be met before a court enjoins administrative action. See Associated Securities Corporation v. Securities and Exchange Commission, 10 Cir., 283 F.2d 773, 774–775.

In support of its motion for a stay of the protective order, the FAA filed in this court the affidavit of the Chief, Air Traffic Branch, Denver area. The affidavit is not controverted. The affiant states:

"The agency [FAA] has determined that the best interests of the Government, the safety of the general public and the welfare of their fellow workers would best be served if 16 of the strikers are not returned to their regular air traffic control duties."

I respectfully suggest the doctrine of separation of powers requires that the courts must recognize the powers, duties, responsibilities, and expertise of the FAA with regard to the protection of the public interest. The district court abused its discretion when it substituted its judgment for that of the FAA.