**UNITED STATES of America,**
**Plaintiff-Appellant,**

v.

**PROFESSIONAL AIR TRAFFIC CONTROLLERS ORGANIZATION (PATCO), its officers, agents, servants, members, et al., Defendants-Appellees.**

No. 916, Docket 34968.

United States Court of Appeals,
Second Circuit.

Argued July 15, 1970.

Decided Dec. 10, 1970.

Certiorari Denied April 19, 1971.
See 91 S.Ct. 1373.

Waterman, Circuit Judge, dissented and filed opinion.

William D. Ruckelshaus, Asst. Atty. Gen., Washington, D. C. (Carl Eardley, Deputy Asst. Atty. Gen., Washington, D. C., Edward R. Neaher, U. S. Atty., Brooklyn, N. Y., Alan S. Rosenthal and Robert E. Kopp, Attys., Dept. of Justice, Washington, D. C., on the brief), for plaintiff-appellant.

James M. Catterson, Jr., Port Jefferson, N. Y. (Catterson & Nolan, Port Jefferson, N. Y., on the brief), for defendants-appellees in No. 34968.

Murray Gartner, New York City (Herbert Prashker, A. Thomas Hunt, Poletti Freidin Prashker, Feldman & Gartner, New York City, on the brief), for plaintiff-appellant in No. 35072.

Nicholas Scoppetta, New York City (Marvin B. Segal, Segal & Hundley, New York City), for defendants-appelles.

Before WATERMAN, MOORE and HAYS, Circuit Judges.

HAYS, Circuit Judge:

### I.

On March 25, 1970, commencing at 8:00 a. m., large numbers of air traffic controllers, employees of the Federal Aviation Administration (FAA), absented themselves from their work. The air traffic controllers reported that they were ill or gave other reasons for their absences. A number of applications were made to the federal courts for injunctions against the employees. The present appeal arises out of such an application by the United States in the United States District Court for the Eastern District of New York against the Professional Air Traffic Controllers Organization (PATCO), its officials and several hundred aircraft controllers. The district court issued a preliminary injunction which enjoined the air traffic controllers from "in any manner continuing, encouraging, ordering, engaging, aiding or taking any part in any strike, work stoppage or slowdown or any interference with or obstruction to the movement or operation of any aircraft. * * *"

Paragraph III of the injunction provides:

"That the Federal Aviation Administration be and it hereby is directed until further order of this court:

(a) To restore all defendants in the action who have returned to work to the performance of the duties to which they were assigned prior to March 25, 1970, not later than May 18, 1970.

(b) To withhold any further administrative actions in respect of suspensions, removals or any other sanctions based upon the alleged work stoppage between March 25, 1970 and April 14, 1970, against any employees who are defendants in these actions and subject to the temporary injunction issued by this court."

The United States appeals paragraph III of the injunction barring the FAA from taking any disciplinary action against the aircraft controllers who participated in the work stoppage.

We have jurisdiction to hear this appeal under 28 U.S.C. § 1292(a) (1) (1964).

We conclude that the order contained in paragraph III of the injunction must be vacated.

### II.

■ The FAA has the power to discipline its employees without judicial interference. In McTiernan v. Gronouski, 337 F.2d 31, 34 (2d Cir. 1964), this court noted the "limited permissible scope of judicial review in this area" and said:

"The taking of disciplinary action against government employees, including the invocation of the sanction of dismissal, is a matter of executive discretion, and is subject to judicial supervision only to the extent required

to insure 'substantial compliance with the pertinent statutory procedures provided by Congress,' * * * and to guard against arbitrary or capricious action * * *."

The FAA is directed by statute to perform a specific task, requiring administrative expertise, in a manner consistent with the public interest. 49 U. S.C. § 1348 (1964). It is for the FAA, not the courts, to gauge the need for and the effect of disciplinary action when an unlawful work stoppage occurs.

"It is not the business of courts to substitute their untutored judgment for the expert knowledge of those who are given authority to implement the general directives of Congress." Air Line Pilots Ass'n. v. Quesada, 276 F. 2d 892, 898 (2d Cir. 1960).

No proper ground is suggested for holding that the action of the FAA in disciplining its employees could be considered arbitrary or capricious. Discipline based upon the finding that the employees' work stoppage was unlawful is clearly within the power of the administrative agency. If the agency's action in any individual case should prove to be arbitrary or capricious it would be subject to administrative and eventually judicial review. See Norton v. Macy, 135 U.S.App.D.C. 214, 417 F.2d 1161 (1969).

Appellees' argument that the court was justified in prohibiting the FAA from disciplining its employees because of the possibility that the controllers were entitled to various procedural protections which do not presently exist in FAA regulations is wide of the mark. The FAA's procedures for discipline of its employees have nothing to do with the question that was before the court —whether the controllers were engaged in an illegal work stoppage and if so, whether they should be enjoined from acting in concert to continue that stoppage. Moreover, the nature of the pro-

hibition against the FAA demonstrates that the trial court was not concerned with the general issue of procedural fairness.[1] The order protects only participants in the work stoppage. All other employees (including participants in the work stoppage charged with independent violations) are subject to disciplinary action. If the issue of procedural fairness were properly before the court its order would have halted all FAA discipline of employees. Or the trial court could have simply required that the procedural protections be afforded to all disciplined employees.

### III.

Appellees further contend that paragraph III of the injunction is necessary to protect the court's jurisdiction over the action before it, citing 28 U.S.C. § 1651 (1964), and to preserve the "status quo" pending a final determination of the dispute. Although two of our sister circuits have been persuaded by this rationale in affirming substantially similar actions taken by district courts, United States of America v. Plasch, (7th Cir. July 10, 1970); United States of America v. Moore, 427 F.2d 1020 (10th Cir. June 8, 1970) (but see dissenting opinion of Breitenstein, C. J.); we respectfully decline to follow their lead.

No action taken by the FAA against any of the individual defendants in this case would have a detrimental effect on the court's jurisdiction. See 6 Moore's Federal Practice ¶54.10[5] (1966 ed.). The court will continue to have subject matter jurisdiction and will retain personal jurisdiction over the defendants. Disciplinary action by the agency will not impair the ability of the court to make a proper decision as to whether a permanent injunction should be granted, if called upon to do so.

Section 1651 cannot be used to allow a court to deal "with a matter lying whol-

---

1. These issues are pending before the same district court judge in Leyden v. FAA, 315 F.Supp. 1398 (69–C–1566), a suit which was commenced prior to the instant controversy.

ly outside the issues in the suit." De-Beers Mines Ltd. v. United States, 325 U.S. 212, 220, 65 S.Ct. 1130, 1134, 89 L. Ed. 1566 (1945).

## IV.

5 U.S.C. § 7311 (Supp. V. 1965–69) provides in pertinent part:

"An individual may not accept or hold a position in the Government of the United States * * * if he—

* * * * * *

(3) participates in a strike, or asserts the right to strike, against the Government of the United States * * *."[2]

■ The trial court determined that the government had proven a prima facie case of an illegal work stoppage. In spite of the statute it enjoined the FAA from taking *any* disciplinary action against the defendants based upon the work stoppage.[3] Paragraph III obviously flies in the face of the statute. It must be vacated.

WATERMAN, Circuit Judge (dissenting):

I respectfully dissent.

As noted by my brothers, prior to the commencement of the two actions before us on this appeal, the first on March 30, 1970 and the second on April 1, 1970, an air traffic controller, one John F. Leyden, commenced a class action on December 10, 1969 in the Eastern District of New York on behalf of himself and all other similarly situated air traffic controllers employed by the FAA in the Eastern Region against the FAA and its Eastern Regional Director.[1] Leyden sought, *inter alia,* a preliminary injunction enjoining the Eastern Regional Director from acting as an appeals official in connection with suspensions[2] of the plaintiffs and enjoining the FAA from holding any hearing or inquiry regarding plaintiffs' appeals from disciplinary action unless seven specific procedural safeguards were afforded the plaintiffs. In that action, after the submission of affidavits, Judge Judd issued a preliminary injunction on August 5, 1970, restraining the Eastern Regional Director from acting as an appeals official in any disciplinary action involving any of the plaintiffs and restraining the FAA from interfering with the right of plaintiffs to record and transcribe proceedings before grievance examiners.[3] On September 11, 1970, the Government answered Leyden's complaint, and on September 30 it filed a notice of appeal from the August 5, 1970 injunction order.

My brothers' essential mistake is in failing to realize that the preliminary injunctions in the present actions, which they would in part vacate, were molded, and properly so, in the light of the issues in the *Leyden* case which was then, and is now, pending before the same judge. The majority's contention that

2. 18 U.S.C. § 1918 (Supp. V. 1965–69) makes criminal any violation of 5 U.S.C. § 7311 (Supp. V. 1965–69) and provides sanctions of up to a year and a day's imprisonment, and a fine of up to $1000.

3. The FAA intends to dismiss only a small number of controllers who were leaders in the strike and to suspend or otherwise discipline certain others. It has been argued that since the statute appears to speak in absolute terms (a striker "may not * * * hold" a government position) and the FAA does not intend to follow these absolute terms, the restraint against the agency is somehow justified. There is a substantial question whether this statute must be read in a manner which would require the government to dismiss all controllers and thereby end air travel service until replacements could be trained. But even if the statute were to be construed in such a manner, it seems obvious that an order prohibiting the discharge of *any* of the offending employees would be unlawful.

1. Leyden v. Federal Aviation Administration and George M. Gary, 315 F.Supp. 1398, 69–C–1566.

2. The suspensions in question were administered for "abuse of sick leave" on June 19, 1969, when numerous FAA employees throughout the country failed to report for work and claimed that they were ill and unable to work.

3. 315 F.Supp. 1398 (EDNY 1970).

the "FAA's procedures for discipline of its employees have nothing to do with the question that was before the court * * *" is, I submit, incorrect. Judge Judd was primarily concerned, as one would think the Government would also be primarily concerned, in achieving "some degree of labor peace" in order to restore normalcy to the nation's airline traffic. The court found that, after the air controllers had returned to work following the entry of a temporary restraining order which the Government had sought and had obtained, the FAA was not treating the air controllers fairly. Judge Judd stated, 313 F.Supp. 181, 187:

> The court hoped that continuing administrative review by the government might bring some result short of amnesty that would satisfy the defendants that they were being fairly treated. It seemed clear to the court that there could be no mediation or amnesty while the men were away from work, but that the possibility existed of some meaningful negotiations after they returned to work. In order to avoid any risk of a new stoppage at the end of the injunction period, the court a few days later submitted a proposal to the parties for indefinite extension of the injunction.

> By the time comments were received on this proposal it appeared there was no change of administration policy which was calculated to take account of any mitigating circumstances in connection with the work stoppage, and there was evidence that transfers of duty were being used in a punitive way and that the limited nature of review of any disciplinary action gave the defendants the idea that they would not be fairly dealt with in the administrative procedure.

The court also found that the air controllers' complaints with working conditions were not de minimus, 313 F.Supp. at 187:

> The court considers also that a substantial number of relatively highly paid men with specialized skills would not violate the law unless there was some provocation that they thought justified it, even though their belief in the justification might be erroneous.

> There has been a reduction of compulsory overtime since the work stoppage, which did not come until after the work stoppage, and which suggests that the F.A.A. may, as alleged, have been unduly slow in relieving the pressure on the Controllers.

> I think I said before, and I say now, that those who knowingly disobey a law must face the penalty for the violation. They have no right to amnesty. Nevertheless, they are entitled to fair treatment in the administration of penalties, to consideration of mitigating circumstances, and to a procedure that is such, as far as the Court can assure, as to make the defendants think it is fair.

Judge Judd listed some of the allegedly burdensome working conditions and quoted statistics which indicated that air controllers as a class suffered an abnormally high incidence of various physical disorders allegedly resulting from the pressure of their work. He concluded, 313 F.Supp. at 188:

> The nature of the re-assignment of the men who returned to work and the nature of the notices to the public about the plans for disciplinary action and the nature of the notice of proposed disciplinary procedure do not indicate to me that the F.A.A. is considering the mitigating circumstances which are reflected by these charges.

> *       *       *       *       *       *

> *It seems to me rather incongruous in this case for the government to ask the court to compel the defendants to return to work and then immediately transfer them to different jobs and serve notice of intention to discharge.* I said on April 13th that if the United States of America seeks equity, it can be compelled to do equity. The complaint in the government action asks

that the men be directed to resume their normal employment. If I thought they were not going to be put to work I would have hesitated before ordering them back. (Emphasis supplied.)

The air controllers were prompted to violate the law in the first place by their poor working conditions. They were reluctant to return to work because of the specter of unfair treatment, a specter which the court found was not without basis. Therefore, of course, the court could properly take into account the threat of heavy-handed treatment by the FAA when it decided to grant the FAA the relief the FAA had requested, and of course it could tailor its relief to encourage labor peace. As Judge Judd noted, the Government wanted the air controllers back on their jobs. The administrative procedures governing the Government's handling of the controllers' actions were, therefore, crucial factors for the court to consider if labor stability were to be promoted, and if the controllers were to be ordered back to work pursuant to judicial decree and under the threat of the exercise of the court's contempt power. Inasmuch as the issues concerning the fairness of the Government's disciplinary procedures were pending in *Leyden*, it made good common sense to preserve the status quo by telling the Government to withhold discipline until the propriety of its disciplinary procedures had been determined. It is not the act of a responsible government agency broadly to seek court intervention by injunction, obtain it, and then, hiding behind the inherent equity powers of the court, seek, by executive action, to nullify unfairly the status quo the court created at the agency's request.

The majority also states that because "[t]he order protects only participants in the work stoppage," "the trial court was not concerned with the general issue of procedural fairness" p. 81. It suffices to say that obviously the involved air controllers were most vitally concerned with procedural fairness, and obvious-

ly were entitled to the assurance the court gave that they would not be subjected to questionable disciplinary procedures following their resumption of work until *Leyden* was judicially resolved.

The majority is also mistaken on a number of subsidiary points. McTiernan v. Gronouski, 337 F.2d 31 (2 Cir. 1964), and Air Line Pilots Assoc. v. Quesada, 276 F.2d 892 (2 Cir. 1960), cited by the majority as giving the courts only a "limited permissible scope of judicial review" of disciplinary actions, are inapposite. In those cases the court was being asked to review what the Government had done in the past. The instant case arises from a government challenge to present action taken by its employees and a government request for affirmative present equitable relief. The question before Judge Judd was: In light of what the Government intends afterwards to do if the court orders an end to the work stoppage and the defendants return to work, should an injunction issue, and, if so, should conditions be attached to its issuance? The critical difference that undermines the precedential value of the cases cited by the majority is that here the Government initiated the suit and it was the Government that asked for equitable relief. Having sought equity it may be compelled to do equity. As stated in Brotherhood of Locomotive Engineers v. Missouri-Kansas-Texas R. Co., 363 U.S. 528, 531–532, 80 S.Ct. 1326, 1329, 4 L. Ed.2d 1379 (1960):

If the District Court is free to exercise the typical powers of a court of equity, it has the power to impose conditions requiring maintenance of the *status quo*. Conditions of this nature traditionally may be made the price of relief when the injunctive powers of the court are invoked and the conditions are necessary to do justice between the parties.

See also Yakus v. United States, 321 U. S. 414, 440, 64 S.Ct. 660, 88 L.Ed. 834 (1944); United States Air Conditioning Corp. v. Fogel, 272 F.2d 879 (3 Cir.

1959). The fear of the air controllers that, if they returned to their jobs, they would be subjected to disciplinary procedures that do not comport with due process is a proper subject for judicial review. As noted above, these procedural questions, though inherent in the posture of the present cases when they were initially before Judge Judd, were *also pending before him in Leyden.* Due to the seriousness of the national problem created by the controllers' work stoppage and the dire consequences which would follow if a second stoppage should be precipitated by any unfair treatment of the controllers after they returned to work, it surely was wise for the court to stay the disciplinary hand of the FAA until the court could conduct a full inquiry into the questioned FAA procedures.

The majority also argues that the injunction against the Government "flies in the face" of 5 U.S.C. § 7311.[4] With deference, it is obvious that this conclusion is incorrect; the court merely ordered the Government to hold all disciplinary measures against the controllers in abeyance until the issues in *Leyden* were resolved. It is perfectly clear that the FAA cannot legitimately invoke § 7311 in an unconstitutional manner, and when, as here, disciplinary procedures are questioned as being unconstitutional, the court has the power temporarily to enjoin the Government from exercising its disciplinary function.

Finally, the FAA admits that it intends to dismiss only a small number of controllers who were leaders in the strike and to suspend or otherwise discipline certain others. This proposed course of action is action which indeed "flies in the face of the statute," for 5 U.S.C. § 7311 speaks in absolute terms.[5] The Congress has told the FAA that, if the controllers are found to have participated in a strike, the agency is compelled by the statute to discharge *all* controllers who are found to have participated in that strike. It is highly inconsistent for the FAA to cite § 7311 to the judicial branch as a ground for vacating a judge's restraining order when the FAA itself unequivocally proposes to ignore the legislative branch's mandate. Although the above interpretation of § 7311 admittedly puts the FAA in the dilemma of discharging all the controllers involved in the work stoppage or dropping its contention that there was such a stoppage, we cannot, as judges, scrap the meaning of so clear a statute in order to resolve the agency's dilemma for it. That task belongs to Congress, which, in light of increasing concerted action by public employees, should enact a more realistic statutory provision. When the FAA asks a court to adapt a troublesome statutory provision to a new situation, it is unseemly for the FAA to argue that the equitable standards it would have the court reach to apply to the situation should not also be equita-

4. The statute is set out at the end of the majority opinion.

5. This conclusion is strongly supported by the legislative history. The original version of the provision was included in an act entitled "An Act to *prohibit* the employment * * *" (emphasis added), 69 Stat. 624, Public Law 84–330, passed August 9, 1955, and read:

No person *shall* accept or hold office or employment in the Government of the United States or any agency thereof * * *, who

* * * * *

(3) participates in any strike or asserts the right to strike against the Government of the United States or

such agency * * *. (Emphasis added.)

The 1966 codification, part of Public Law 89–554, gave the section its present wording. Although "No person shall * * * hold" was changed to "An individual may not * * * hold" the Committee Report is overly explicit in stating that no substantive change was intended. Report (No. 1380) from the Committee on the Judiciary, United States Senate, to Accompany H.R. 10104, pp. 19–21 (1966). Indeed, the Report states:

The words "may not" are used in the prohibitory sense, as "is not authorized to" and "is not permitted to." *Id.* at 20.

bly applied to the parties the FAA has sued.

For all of the above reasons I would, without modification, uphold the preliminary injunctions[6] issued below.

6. Both the majority and I have referred to "injunctions" throughout our opinions. However, between oral argument and the present decision, the Air Transport Association's appeal was dismissed on September 11, 1970 upon stipulation. Hence only the merits of the Government's case have been considered.