**AIR TRANSPORT ASSOCIATION, American Airlines, Inc., et al., Plaintiffs,**

v.

**PROFESSIONAL AIR TRAFFIC CONTROLLERS ORGANIZATION (PATCO), Michael J. Rock, et al., Defendants.**

**UNITED STATES of America, Plaintiff,**

v.

**PROFESSIONAL AIR TRAFFIC CONTROLLERS ORGANIZATION (PATCO), its officers, agents, servants, members, et al., Defendants.**

Nos. 70–C–400, 70–C–410.

United States District Court, E. D. New York,

April 7, 13, May 5, 1970.

Edward R. Neaher, U. S. Atty., Brooklyn, N. Y., for the United States; Robert A. Morse, Chief Asst. U. S. Atty., Lloyd H. Baker, Richard C. Antonacci, Howard Babbush, Cyril Hyman, Asst. U. S. Attys., of counsel.

Poletti, Freidin, Prashker, Feldman & Gartner, New York City, for Air Transport Ass'n of America; Herbert Prashker, Murray Gartner, Eric Rosenfeld, New York City, of counsel.

Martin J. White, Thomas Halloran, Jamaica, N. Y., for Federal Aviation Adm'n.

Segal & Hundley, New York City, Catterson & Nolan, Port Jefferson, N. Y., for "PATCO"; Marvin Segal, Nicholas Scoppetta, New York City, James Catterson, Jr., Port Jefferson, N. J., of counsel.

JUDD, District Judge.

## MEMORANDA

In two actions for injunctions against work stoppages by federal employees, oral memoranda were placed in the record as occasion required, and are assembled here.

Following calls by several hundred air controllers in many cities of the United States on March 25th and 26th, 1970, that they were too sick to work, Air Transport Association of America (ATA) and thirteen member airlines brought the first action, 70–C–400, against Professional Air Traffic Controllers Organization (PATCO), its officers and directors and various of its leaders in the metropolitan area, and approximately 200 individual members, to enjoin the work stoppage, to direct them to perform their statutory duties and for damages.

The court on March 30th signed an order to show cause for a preliminary injunction with a temporary restraining order against any concerted refusal to work.

Two days later, the United States of America filed the second injunction action, 70–C–410, against PATCO and its officers and members and certain of its leaders in the metropolitan area. The court issued an order to show cause for a preliminary injunction and a temporary restraining order in terms basically similar to those in the ATA order.

The absence of the Controllers continued in spite of the temporary restraining order. ATA presented an order to show cause which the court signed on April 6th and which was served on the Controllers personally that night, directing them to appear in court on April 7th (the adjourned date for hearings on the preliminary injunction) and show cause why they should not be punished for contempt of court for violation of the ATA restraining order.

### Memorandum on Standing of Plaintiffs in 70–C–400 (April 7, 1970)

In connection with the motion of defendants in 70–C–400 to dismiss the airlines' complaint for lack of standing, I have given considerable thought to the motions, and have reviewed the materials that have been submitted to me.

The complaint charges an illegal conspiracy to violate the United States statute which forbids anyone to hold a position with the United States government while he participates in a strike or asserts the right to strike or is a member of an organization of employees that he knows asserts the right to strike against the government. 18 U.S.C.A. § 1918. This is one of the laws of the United States which it is my sworn duty to uphold.

The complaint alleges that an illegal work stoppage has occurred by concerted action of the defendants, based on false assertions of illness, that this is a strike, and that it has caused serious financial damage to the airline plaintiffs and interferes with their normal operations.

One of the reasons for the federal statute against strikes by federal employees is that the employees are performing an essential service, for the benefit of the public, and also for the segment of the public which the particular employees serve.

The tendency of recent judicial decisions has been to permit private ac-

tions for violation of federal statutes.[1] In this case, the damages allegedly incurred by the plaintiff airlines were readily foreseeable by defendants prior to the work stoppage, and are so direct a consequence of the allegedly illegal action that the persons who are directly affected by the work stoppage should have the right to sue for an injunction. I do not have to determine at this time the plaintiffs' right to damages against individual air Controllers or against PATCO.

This is not a suit against the United States, but against individuals and an organization who owe duties to the United States and to the users of airport facilities. The concept of privity no longer has much application to civil actions.[2] In any case, I will not treat any requirement of privity as a bar to this action.

The right to mandamus against the individual airport Controllers involves questions which I have not yet resolved. But the right to an injunction can be supported by proof of concerted illegal action whose reasonably foreseeable effect is to cause harm to the airlines which cannot be fully remedied by money damages.

The rights of Air Transport Association are not as direct as those of the individual airlines. However, in a suit by thirteen separate airlines, there is need for some centralized control in the interest of efficient conduct of litigation. One purpose and function of the Air Transport Association is to promote and defend the interests of its several member airlines. This seems to me to jus-

tify letting the Association remain as a party as well as its component airlines.

Therefore, the motion to dismiss the complaint for lack of standing is denied, without prejudice to future consideration of the portions of the complaint which seek money damages or mandamus.

### Memorandum on Issuance of Temporary Injunction (April 13, 1970)

The order which I am about to sign with the consent of the defendants, disposes of the pending motions for preliminary injunction temporarily, and I hope on a basis that will not require further hearings.

More than forty years ago it was recognized that the labor injunction frequently constituted an abuse of judicial power.[3] It may be remembered that Circuit Judge John J. Parker, an eminent jurist, was denied confirmation as a Justice of the United States Supreme Court because he had upheld a "yellow dog" contract,[4] at a time when United States Supreme Court decisions permitted prohibitions against private employees belonging to a union.[5]

More than a generation ago, the labor injunction was outlawed in private matters except for very limited situations, primarily where it could be used to maintain labor peace while impartial mediation took place.[6]

Although the Norris-LaGuardia Act does not apply to strikes by United States government employees, the court endeavored to apply its principles in this

1. Borak v. J. I. Case Company, 317 F.2d 838, 848–849 (7th Cir. 1963) ; Office of Communication v. Federal Communications Commission, 123 U.S.App.D.C. 328, 359 F.2d 994 (1966).

2. Prosser, The Fall of the Citadel, 50 Minn.L.Rev. 791 (1966).

3. Great Northern Ry. Co. v. Brosseau, 286 F. 414 (D.N.D.1923). See also the dissenting opinions of Holmes, J. and Brandeis, J. in Truax v. Corrigan, 257 U.S. 312, 343, 366–367, 42 S.Ct. 124, 133, 142, 66 L.Ed. 254 (1921).

4. International Organization, United Mine Workers of America v. Red Jacket Consol. Coal & Coke Co., 18 F.2d 839 (4th Cir. 1927). See Rayback, A History of American Labor (1959) 319.

5. E. g., Hitchman Coal & Coke Co. v. Mitchell, 245 U.S. 229, 38 S.Ct. 65, 62 L.Ed. 260 (1918).

6. Norris-LaGuardia Act, 29 U.S.C. §§ 101–115, effective March 23, 1932.

case at the outset. Even the United States must do equity when it seeks the aid of an independent court of equity.[7]

An injunction acceptable to both sides, conditioned on impartial mediation, proved impossible because it was pointed out that PATCO has not been certified as a representative of the air Controllers. At the close of the hearing on Friday, April 10th, it was disclosed that one reason why PATCO's petition for certification has not been granted is that F.A.A. has challenged its status. On the preceding day, the regional Vice President of a rival organization admitted that PATCO now claimed over 400 members from the New York area while the rival organization's membership had declined from 350 to 135.

The federal law makes it a crime for a government employee to participate in a strike or to belong to an organization which claims the right to strike, while he is a government employee.[8]

The labor injunction therefore comes back into the public employee situation as a milder means of enforcement than the criminal penalty for strikes, but it comes back in a procedure where the employees do not have the right to a jury trial and where they are not subject to the requirement of proof beyond a reasonable doubt which would exist in the enforcement of a criminal statute.

█ The labor injunction, even as a substitute for criminal enforcement, should be used only as a last resort.

█ The present order, which substitutes a temporary injunction for the previous ex parte restraining order, directs the air Controllers to return to work, with a concomitant requirement that their employer, the Federal Aviation Administration, shall permit them to return without any conditions.

The order is based on the consent of the defendants, because I am entering it before they have presented any evidence.

It is limited to a three-week period, so that we can determine what the developments are during that period, and whether it will be necessary to take more testimony on the motions for preliminary injunction.

The order is based on the need for urgent resolution of the present work stoppage, and the possibility that long hearings may be necessary to establish whether the individual defendants are in contempt of the temporary restraining order and whether there are circumstances which might mitigate any penalties for violation of the order.

The order is based on the fact that more than three full days of testimony have resulted in showing that the following facts have been established prima facie to the satisfaction of the court, subject to possible rebuttal by the defendants:

1. PATCO is an Iowa corporation organized to represent air Controllers in respect of their compensation and working conditions, and having a place of business within the Eastern District of New York.

2. Since March 25, 1970, the number of absences from work by air Controllers on account of alleged illness has increased from the normal average of 4% to a total of more than 60% at the facilities in the New York area.

3. Officers of PATCO publicly announced their intention to stop work on March 25, 1970 unless their demands upon F.A.A. were met, and they encouraged the air Controllers to claim that they were ill and to stay away from work. Background of those demands has not yet been set forth in the evidence because I have not heard the defendants' case.

4. The work stoppage represents a concerted action on the part of the air Controllers in the New York area.

---

7. See Luckenbach S. S. Co. v. The Thekla, 266 U.S. 328, 339–40, 45 S.Ct. 112, 113, 69 L.Ed. 313 (1924); Deseret Apart-ments, Inc. v. United States, 250 F.2d 457, 458 (10th Cir. 1957).

8. 18 U.S.C. § 1918.

5. There have been substantial reductions in the number of flights in and out of the New York area as a result of the work stoppage.

6. The maintenance of normal flight conditions is important to the public interest, to the national defense, and to the member airlines of plaintiff Air Transport Association, Inc.

7. The public and the plaintiffs in 70–C–400 are suffering irreparable damages as a result of the work stoppage, which still continues.

Therefore, I conclude that there is probable cause to believe that the defendants have violated their statutory duty to refrain from strike action, and that there is no adequate legal remedy to protect the plaintiffs' interests.

I believe that what I am doing is within my power because I think I can impose conditions that are appropriate on the granting of the relief that the plaintiffs request, and it is the best way to resolve the situation. Accordingly, I am signing one order in 70–C–400 and another in 70–C–410 with the same terms.

*Memorandum on Granting of Preliminary Injunction (May 5, 1970)*

I have called this session pursuant to a proposal which I submitted to the parties at a hearing on April 16th, because I thought it important to achieve a greater degree of labor peace and to do it on terms that don't have a near termination date. (The proposal contemplated extension of the temporary injunction to continue until the determination of the action, granting of procedural rights to the air Controllers in F.A.A. disciplinary proceedings, and a change in the timetable for further proceedings in the case.)

I have considered all the papers that were submitted and the arguments made this morning and have gone through the file from the beginning, and I now want to put in the record this Memorandum of Decision.

In three days of hearings the plaintiffs presented evidence which the court described as establishing a prima facie case of concerted refusal to work in violation of the federal anti-strike statute.

After discussion between the court and the parties, a temporary injunction was signed on April 13th, with the consent of the defendants, which enjoined the continuance of the work stoppage and directed the individual defendants to return to work. The government did not consent to the order because it included a direction that the F.A.A. should permit the individual Controllers to return to work without condition. The ATA did not consent to the order because it was limited in time and because ATA wished to complete the plaintiff's case by putting each defendant on the stand to answer questions about his reasons for not working.

The court considered that this was not necessary for the plaintiff's prima facie case and that even proceeding immediately to the defendants' case would not permit the conclusion of the hearings and restoration to work as quickly as the form of temporary restraining order that was signed.

The government stated that the question whether it exercised administrative proceedings or deferred them was under review, and the court stated that the injunction did not prevent disciplinary proceedings. The men returned to work within twenty-four hours after the temporary injunction was signed.

The court appointed a board of medical examiners to examine any men who claimed still to be unable to return to work. It made a report on 28 men and found 13 fit for duty without condition and gave a medical description of the others. The reason for my making the temporary restraining order for three weeks only, with some extensions since, was that the Controllers requested amnesty as one of the terms for disposing of the matter and that amnesty had reportedly been extended to Post Office workers recently after a shorter strike.

The court hoped that continuing administrative review by the government might bring some result short of amnesty that would satisfy the defendants that they were being fairly treated. It seemed clear to the court that there could be no mediation or amnesty while the men were away from work, but that the possibility existed of some meaningful negotiations after they returned to work. In order to avoid any risk of a new stoppage at the end of the injunction period, the court a few days later submitted a proposal to the parties for indefinite extension of the injunction.

By the time comments were received on this proposal, it appeared there was no change of administration policy which was calculated to take account of any mitigating circumstances in connection with the work stoppage, and there was evidence that transfers of duty were being used in a punitive way and that the limited nature of review of any disciplinary action gave the defendants the idea that they would not be fairly dealt with in the administrative procedure.

The court still considers it clear that a strike by federal employees is illegal, treating the statute as constitutional, and that there is a prima facie case of an illegal work stoppage. The preliminary injunction was based on that assumption.

Individual affidavits from the defendants now assert that the men were not acting in concert, and that each one was suffering from extreme nervous exhaustion and fatigue, and some from additional illnesses, which were caused by the working conditions imposed on them by the F.A.A.

■ These affidavits would create real issues as to findings of contempt against any individuals, but the court deems it possible that 200 people would not all experience the same degree of exhaustion on the same day and recover on the same day. Therefore it believes that the facts shown in the affidavits

don't prevent a finding of probable success of the plaintiffs in obtaining an injunction, and that it is proper to extend the temporary injunction without hearing the individual Controllers.

The reports of defendants' counsel concerning their consultation with their clients after the proposal which I made on April 16th indicate that they will acquiesce in the form of preliminary injunction that I proposed, without requiring that the defendants' case be heard.

The court considers also that a substantial number of relatively highly paid men with specialized skills would not violate the law unless there was some provocation that they thought justified it, even though their belief in the justification might be erroneous.

There has been a reduction of compulsory overtime since the work stoppage, which did not come until after the work stoppage, and which suggests that the F.A.A. may, as alleged, have been unduly slow in relieving the pressure on the Controllers.

■ I think I said before, and I say now, that those who knowingly disobey a law must face the penalty for the violation. They have no right to amnesty. Nevertheless, they are entitled to fair treatment in the administration of penalties, to consideration of mitigating circumstances, and to a procedure that is such, as far as the court can assure, as to make the defendants think it is fair.

I think it was said in the *Amos Treat* case that the procedure should have "the very appearance of complete fairness." [9]

■ Even if a defendant pleads guilty to a crime, the court has a duty to consider individual circumstances before determining whether to impose any penalty.

There are mitigating circumstances shown here, even in the affidavit of ATA's counsel, which recites in quota-

9. Amos Treat & Co., Inc. v. Securities and Exchange Comm., 113 U.S.App.D.C. 100, 306 F.2d 260, 267 (1962).

tions from the Corson Report on air traffic service [10] that "No single cause accounts for this crisis in the relation between F.A.A.'s management and the organizations representing its employees. Yet our observations suggest that among the most important is the failure of F.A.A.'s management at all levels to truly understand the role of the employee organizations and to accept them as not only legitimate, but hopefully as collaborators in building understanding, satisfaction, and an *esprit de corps*," and which recommends among other things that the F.A.A. "Expedite, in good faith, the resolution * * * of all existing labor-management problems."

Since this extract from the Corson Report is submitted by the plaintiffs, I think it is a factor that can be considered.

Also, the government has shown me a complaint which was filed in January in the District Court for the District of Columbia by PATCO against Secretary Volpe,[11] which alleges that the effect of the Federal Aviation Administration in not hiring additional staff and the burden of expanding air traffic had resulted in hours of service and conditions of service that cause exhaustion and enervation. The allegations in the complaint, which I presume are still to be determined, state that the air traffic Controllers generally, to the extent of 67.6 per cent. suffered pains over the heart and chest, to the extent of 81.1 per cent. vomited blood or coughed up blood or have done so since becoming air traffic Controllers, to the extent of 64.9 per cent. have many headaches, and that they—Paragraph 14—"are subject to an extraordinary and rapid deterioration of their physiological and psychological functions, and are caused to be in a state of poor health, frequently by the age of forty," many years sooner than would be the case if they were not subject to the conditions complained of.

The nature of the re-assignment of the men who returned to work and the nature of the notices to the public about the plans for disciplinary action and the nature of the notice of proposed disciplinary procedure do not indicate to me that the F.A.A. is considering the mitigating circumstances which are reflected by these charges.

The nature of administrative proceedings for discipline is at issue in another action in this court, where the representatives of the air Controllers ask for a determination that they are entitled to various procedural protections which don't exist in the present F.A.A. regulations.

In Leyden v. Federal Aviation Administration, 69–C–1566, they ask for the right to a recording and transcription of all proceedings, to production of all witnesses and evidence in support of charges, to confrontation and cross-examination of all witnesses, and to present both oral and documentary evidence on their behalf, among other things.

This has been disputed by the government and remains for decision.

█ It seems to me rather incongruous in this case for the government to ask the court to compel the defendants to return to work and then immediately transfer them to different jobs and serve notice of intention to discharge. I said on April 13th that if the United States of America seeks equity, it can be compelled to do equity. The complaint in the government action asks that the men be directed to resume their normal employment. If I thought they were not going to be put to work I would have hesitated before ordering them back. I have been told that there is no power to enjoin administrative discipline, but I disagree.

One precedent is the similar case in the District of Colorado, where Chief Judge Arraj ordered the Federal Aviation Administration to take no further administrative action concerning any

10. Air Traffic Controller Career Committee Report, Jan. 1970, pp. 108–10.

11. Civ. 101–70.

sanctions based on the work stoppage.[12] My proposed order may go farther in relation to the consideration of transfers which may be punitive rather than administrative.

Judge Parsons in Chicago entered a similar order,[13] although it was not quite as broad.

■ Judge Lambros in Cleveland told me on April 9th that he had told the United States Attorney that the F.A.A. must not suspend the men who returned to work.[14] It seems to me that the men in New York should have the same rights as those in other states.

The facts alleged by Mr. Catterson in support of the order to show cause which I signed on May 1st, give ample support for a similar order here, pending a determination of what the F.A.A. is doing and what the rights of the men are.

Section 705 of Title 5 of the United States Code permits a court to issue a stay in aid of judicial review.

I recognize, as Mr. Morse said, that the Supreme Court in the *Goldberg* against *Kelly* decision mentions that government employment might be terminated without a prior evidentiary hearing.[15] But it did not say that there was no right to an evidentiary hearing. In fact, it said there is a constitutional right to present evidence orally and to confront and cross-examine adverse witnesses and that an impartial decision is essential.[16] It is not clear that there is any impartial decision-maker in F.A.A. disciplinary procedure on suspension under 30 days, which may carry penalties of up to $1,000 or more.

The application of the *Goldberg* decision to this case, and the answers to the questions raised in the *Leyden* case, are not clear, and the need for clarification of those questions justifies a restraint on disciplinary proceedings until the procedural rights of the defendants are determined.

Judge Zavatt in the first *Leyden* case [17] said there was no proof of irreparable injury. But this is a different case, with more substantial penalties, and such a great number of individuals that equity jurisdiction would exist to avoid multiplicity of actions by deciding the procedural rights first. For the same reason the government's case on exhaustion of administrative remedies does not apply here. I don't base equity jurisdiction only on multiplicity of action, but I cite it as one factor to be considered.

Another factor is the special character of the defendants' employment, where there is no other possible employer to use the same skills while they are suspended or if they are discharged. So that there is more risk of irreparable damage involved here. Although the preliminary injunction runs for the duration of the action, my proposed restraint on the F.A.A. will run only until further order of the court. And I will entertain further applications in reference to it as soon as the District Court complaint in the District of Columbia and

12. United States v. Moore, et al. (D.Colo.) C-2175 and C-2186, order dated April 27, 1970.

13. United States v. Plasch, et al., (N.D. Ill.) 70-C-746, order dated April 9, 1970.

14. United States v. Professional Air Traffic Controllers Organization, et al., (E.D. Ohio) C-70-320.
 Since the various actions against air traffic Controllers in sixteen different districts did not involve common pretrial discovery, they did not fit within the Rules of Procedure of the Judicial Panel on Multidistrict Litigation. By analogy to the procedures suggested in conflicting class actions, however, it seemed appropriate to resort to "Informal spontaneous consultation and cooperation between the concerned judges and courts." Manual for Complex and Multidistrict Litigation (West Pub. Co. 1969) p. 65.

15. 397 U.S. 254, 263, 90 S.Ct. 1011, 1018 and n. 10 (1970).

16. 397 U.S. at 269, 270, 271, 90 S.Ct. at 1021, 1022.

17. Leyden v. Boyle, 69-C-1244, order dated October 22, 1969.

the *Leyden* case are decided, or before if there is good reason shown.

I have considered the case which was cited in a supplemental memorandum last night or this morning from the United States Attorney, McTiernan v. Gronouski, which is a Second Circuit case, cited as 337 F.2d 31, but that is a different case. That involved an appeal from a decision after dismissal, and the court pointed out that while disciplinary action involved executive discretion, it was subject to supervision to require compliance with statutory procedures and to guard against arbitrary and capricious action.[18] We have here to determine both the meaning of the Congressional direction and the question whether the F.A.A. is being arbitrary.

Finally, on this point I cite the decision of Judge Burger, the week before he became Chief Justice, where he found that "The administrative conduct reflected in this record is beyond repair," and he proceeded to exercise powers that really belonged to the Federal Communications Commission, but which it had shown itself to be incapable of performing properly. That case is the Office of Communication of United Church of Christ v. Federal Communications Commission, D.C.Cir., 425 F.2d 543, decided June 20, 1969,[19] and confirmed on a petition for rehearing *en banc* on September 5, 1969, with a memorandum which was even more critical of the administrative agency.

It is too early to say whether the actions of the F.A.A. are beyond repair, but Judge Burger's case shows the extent of the court's power to protect against improper procedure or agency action.

The order I propose to maintain the *status quo* is well within that power.

 Just another comment: I was told before that the court was wrong in seeking mediation before issuing the temporary injunction. I consider that it is always proper for a court to point out to litigants the disadvantage of fighting a case to the finish and to encourage conciliation. I think that is especially true here, where there was little evidence of meaningful negotiations before the work stoppage began.

I have prepared a preliminary injunction which I am going to modify in one respect in the light of what Mr. Halloran said.

The injunction restrains PATCO and all F.A.A. employees, until the final determination of these actions, from taking part in any work stoppage, slowdown, etc., or obstructing the orderly continuance of air traffic, provides for a penalty of $250. per man for the first day of any violation of the injunction and $125. per man for any subsequent days, subject to hearings before the penalty is imposed, directs the F.A.A. to restore the defendants who have returned to work to the duties to which they were assigned before the work stoppage, and directs the F.A.A., but only until further order of the court, to withhold any further administrative action in respect of sanctions based upon the alleged work stoppage. The court retains. jurisdiction in the premises.

I will sign two copies of this injunction, one to be filed in each case.

---

18. 337 F.2d at 34.

19. Also reported in full in 16 R.R.2d 2095.