AIR TRANSPORT ASSOCIATION OF AMERICA et al., Plaintiffs,

v.

PROFESSIONAL AIR TRAFFIC CONTROLLERS ORGANIZATION ("PATCO") et al., Defendants.

No. 70 Civ. 400.

United States District Court, E. D. New York.

July 17, 1978.

---

Poletti, Freidin, Prashker, Feldman & Gartner, by Herbert Prashker, New York City, for plaintiffs.

Barr & Peer, by William B. Peer, Washington, D. C., for defendants.

## MEMORANDUM AND ORDER

PLATT, District Judge.

By an order to show cause with an affidavit annexed, dated May 26, 1978, and by subsequent notice of motion seeking to amend their original motion, and a stipulation dated June 22, 1978, which was so ordered by this Court on June 23, 1978, plaintiffs have moved for an adjudication that the defendant, Professional Air Traffic Controllers Organization ("PATCO"), be held in civil contempt of Court for violating and disobeying the final judgment of this Court filed on September 9, 1970, by virtue of alleged slowdowns by air traffic controllers, on May 25 and 26, 1978, and June 6 and 7, 1978, and for an order requiring PATCO, in accordance with the aforesaid judgment of September 9, 1970, to pay to the plaintiffs the sum of $25,000 for each day, or part thereof, during which such violations have occurred.

Defendant PATCO has itself made a motion to vacate plaintiffs' order to show cause and to dismiss plaintiffs' application on the grounds that this Court's final judgments of September 9, 1970 and October 20, 1972 "do not apply to or restrain the conduct alleged against defendant PATCO which is extant".

Prior to the hearing of the above motions, as indicated above, the parties entered into a Stipulation Re Motion for Contempt on June 22, 1978, which this Court so ordered on June 23, 1978, which provides in pertinent part as follows:

"The plaintiffs' aforesaid motions for an adjudication in contempt are by this stipulation amended to claim the following violations: violations by PATCO of the aforesaid injunction of September 9, 1970 by virtue of slowdowns on May 25 and 26 and on June 6 and 7, 1978.

"PATCO asserts, and by this stipulation retains its right to assert, that the aforementioned injunction against PATCO was not valid and effective as against PATCO on May 25 and 26, 1978 and on June 6 and 7, 1978.

"If it be determined by this Court that the aforesaid injunction against PATCO was valid and effective on the aforesaid dates, it is agreed that for purposes of this motion only, and without prejudice to PATCO's reserved rights under paragraph 7, PATCO shall be deemed to have disobeyed the prohibitions of said injunction with respect to slowdowns by air traffic controllers on May 25 and 26, 1978 and June 6 and 7, 1978.

"Upon an adjudication that the said injunction was valid and effective against PATCO on May 25 and 26, 1978 and on June 6 and 7, 1978, and that PATCO is, by agreement of the parties, deemed to have disobeyed the said injunction with respect to slowdowns on said dates, as provided by paragraph 8, the Court shall enter judgment requiring PATCO to pay the Air Transport Association of America the sum of One Hundred Thousand ($100,000) Dollars (that is, Twenty-Five Thousand ($25,000) Dollars with respect to each of the aforesaid four days, as provided in the aforesaid judgment of September 9, 1970), the plaintiffs waiving, as against the defendants and defendant PATCO's officers, directors,

members and constituent bodies, any other claim for damages, costs or attorneys' fees in addition to said stipulated sum for any slowdowns occurring to and including June 20, 1978."

Thus, this stipulation in essence provides that (i) plaintiffs' motion be deemed amended to seek contempt adjudications from this Court only as to May 25 and 26, 1978, and June 6 and 7, 1978, and (ii) defendant PATCO concedes, for the purposes of plaintiffs' contempt motion only, that if this Court shall decide that its prior aforementioned orders do "apply to or restrain the conduct alleged against defendant PATCO", PATCO shall be deemed to have disobeyed the September 9, 1970 order on those dates and shall pay plaintiff $100,000 in accordance with the terms of that order.

The effect of this stipulation then is to leave for this Court to decide only the question whether its prior orders do presently "apply to or restrain the conduct alleged against defendant PATCO."

In resolving this question, it is necessary first to examine the history of this action.

In the words of my late and highly esteemed colleague Judge Orrin G. Judd, in *Air Transport Association v. Professional Air Traffic Controllers Organization,* 313 F.Supp. 181, 183 (E.D.N.Y.), *vacated in part* 438 F.2d 79 (2d Cir. 1970), *cert. denied,* 402 U.S. 915, 91 S.Ct. 1373, 28 L.Ed.2d 661 (1971), the original complaint in this proceeding

"charges an illegal conspiracy to violate the United States statute which forbids anyone to hold a position with the United States government while he participates in a strike or asserts the right to strike or

is a member of an organization of employees that he knows asserts the right to strike against the government. 18 U.S.C. § 1918. . . ."[1]

"The complaint alleges that an illegal work stoppage has occurred by concerted action of the defendants [PATCO and individual air traffic controllers], based on false assertions of illness, that this is a strike, and that it has caused serious financial damage to the airline plaintiffs and interferes with their normal operations."

On the date of the complaint, March 30, 1970, Judge Judd signed an order to show cause, bringing on a motion for preliminary injunction, with a temporary restraining order which provided that until April 9, 1970, defendants be restrained, *inter alia,* "from . . . conducting, continuing or engaging in any strike or other concerted failure by Air Traffic Controllers employed by the Federal Aviation Agency . . . to report for work or perform work, by concerted 'sick call' or otherwise, or in any concerted slowdown in the performance of their work."

The defendants having refused to obey such restraining order, plaintiffs on April 6, 1970, moved by further order to show cause to hold defendants in contempt of Judge Judd's restraining order.

On April 9, 1970, Judge Judd continued the temporary restraining order for an additional ten days, changing the language of the prohibition clause to read, in pertinent part, that defendants were restrained from:

". . . in any manner continuing, encouraging, ordering, engaging, ob-

---

1. Section 1918 of 18 U.S.C. provides in pertinent part that:

"Whoever violates the provision of section 7311 of title 5 that an individual may not accept or hold a position in the Government of the United States or the government of the District of Columbia if he—

\* \* \* \* \* \*

(3) participates in a strike, or asserts the right to strike, against the Government of the United States or the government of the District of Columbia;

\* \* \* \* \* \*

shall be fined not more than $1,000 or imprisoned not more than one year and a day, or both."

Section 7311 of 5 U.S.C. (which, in paragraph (3), repeats the language of paragraph (3) above), is the civil counterpart of section 1918. In accordance with this latter statutory prohibition, all federal employees are required to take an oath, on assuming their positions, which, among other things, forswears participation in a strike. *See* 5 U.S.C. § 3333.

structing, aiding or taking part in work stoppage or slowdown or any interference with or obstruction with the movement or operation of any aircraft and air commerce or air transportation at any traffic facility operated by the Federal Aviation Administration, or interference with or obstruction to the application of the safety standards and procedures established by the FAA for the regulation and control of air traffic in the United States of America."

This language was carried forward without material change into an order of temporary injunction entered April 13, 1970, which was extended by order dated April 20, 1970, and in an order of preliminary injunction entered after a hearing on May 5, 1970.

On or before April 14, 1970, defendants' "assertions of illness" had come to an end, leaving for determination by this Court plaintiffs' application for a permanent injunction and plaintiffs' claims for damages arising from defendants' alleged violation of the law and from defendants' alleged breach of the Court's injunction order.[2]

Negotiations ensued between the parties in which they sought to resolve their differences and to settle the lawsuit. On August 24, 1970, counsel for PATCO submitted a written settlement proposal pursuant to which "PATCO, its officers and members would consent to a permanent injunction" which, among other things,

"would restrict, prohibit and enjoin PATCO, all members of the Professional Air Traffic Controllers Organization, their officers, agents, and employees, from acting in concert or participating in, calling, causing, authorizing, inducing, etc. any strike or other concerted failure of air traffic controllers employed by the Federal Aviation Agency *to perform, to work,*or report for work *in any concerted slowdown* in the performance of their work." (Emphasis added.)

It is significant to note first that the 1970 dispute involved "false assertions of illness"

and second that the above draft was prepared by the attorneys for PATCO, not the attorneys for the plaintiffs.

Further discussions followed and on September 9, 1970, the parties entered into a stipulation of settlement which provided, in pertinent part, for plaintiffs' waiver of its damage claims against defendants and for a final judgment of permanent injunction which prescribed that:

"PATCO, its officers, agents, employees and members, its successors or assigns, and any other person acting in concert with it or them, is permanently prohibited and enjoined from, in any manner, calling, causing, authorizing, encouraging, inducing, continuing or engaging in any strike (including any concerted stoppage, slowdown, or refusal to report to work) by air traffic controllers employed by an agency of the United States, or any other concerted, unlawful interference with or obstruction to the movement or operation of aircraft or the orderly operation of any air traffic control facilities by any agency of the United States."

and that

"in the event the defendant PATCO shall itself engage or participate in any action which violates the terms of paragraph '1' of this judgment, PATCO shall be required to pay to the plaintiff Air Transport Association of America, Inc., or to its assignee or assignees, the sum of twenty-five thousand dollars ($25,000) for each day, or part thereof, during which such violation by said defendant continues, said obligation to be in addition to and without prejudice to any other rights which plaintiffs or any of them, may have in respect of such violation, provided, however, that any payment by PATCO pursuant to the terms hereof shall be credited against any other sums payable by PATCO on account of such violations to said plaintiff or to any other plaintiff herein, the manner in which said credit to be applied to be determined by the Court as the equities shall then appear."

---

2. Plaintiffs have alleged such damages exceeded $50,000,000.

Under the stipulated settlement PATCO was immediately "permanently" enjoined, as indicated above, but the individual defendants named in the proceeding (i. e., the air traffic controllers themselves) were given an opportunity during the ensuing two years, either to secure a judicial determination with respect to the constitutionality of the statutory prohibition against strikes by government employees or to deny and litigate their personal involvement in the alleged violations.[3] Moreover, with respect to PATCO, the stipulation specifically provided it would have the right to apply to the Court to vacate or revise the final judgment "in the event the Congress of the United States shall enact legislation making it lawful for employees of the United States to strike, or the Supreme Court of the United States shall directly rule that Congress may not constitutionally make such conduct unlawful." No appeal was taken from the judgments entered on these agreements and no motion for revision or vacatur has ever been made.

Finally, bringing the case up to the present, in an affidavit filed in support of plaintiffs' May 26, 1978, order to show cause herein it is alleged upon information and belief (and no affidavit contradicting such allegations has since been filed herein) that on May 23, 1978, John F. Leyden, President of PATCO, "held a press conference in Washington, D. C. at which he stated that frequent refusal by three airlines—Northwest Airlines, Inc., Pan American World Airways, Inc. and Trans World Airlines, Inc., all of them plaintiffs in this action—to let air traffic controllers ride free in cockpits on overseas flights as observers of in-flight techniques might trigger nationwide air traffic slowdowns. Upon information and belief, Leyden stated that the controllers are 'angry', and 'fed-up' with these airlines, predicted a 'spontaneous' slowdown could hit 'today, tomorrow or anytime' and observed that the airlines 'can allow us a free seat, or spend some money

burning fuel'." [4] Plaintiff's order to show cause was filed three days later and defendants' motion to vacate followed quickly on its heels.

As noted above, the parties have stipulated that if this Court determines that the September 9, 1970, permanent injunction against PATCO, entered pursuant to the aforesaid stipulation, was valid and effective in May and June of this year, "PATCO shall be deemed to have disobeyed the prohibitions of said injunction with respect to slowdowns by air traffic controllers on May 25 and 26, 1978, and June 6 and 7, 1978."

In making their motion to vacate, defendants rely primarily on *New York Telephone Company v. Communications Workers of America,* 445 F.2d 39 (2d Cir. 1971), claiming that this case supports their position with respect to the applicability of the aforesaid permanent injunction to the present slowdowns. PATCO says that the case is indistinguishable and that it stands for the proposition that an injunction issued in a particular controversy and designed to restrain conduct arising out of that controversy may not lawfully be used as a basis to hold persons in contempt as to a future matter of dispute substantially altered from the original matter which has since been resolved. In particular, PATCO claims that the 1970 dispute related to the understaffing of air traffic control facilities, and the resulting impact on controllers, whereas the present dispute involves the issue of "free rides" to Europe to obtain familiarity with in-flight procedures. Thus the two disputes are totally different and unrelated and, under the *Communications Workers* case, the injunction entered as to the former dispute does not and arguably cannot apply to the latter one.

Plaintiffs, on the other hand, say that the *Communications Workers* case is distinguishable both on the facts and the law from the instant context and does not pre-

---

**3.** No individual air traffic controller did so and the Court accordingly entered a permanent injunction as to the individual defendants on October 20, 1972.

**4.** As stated on the oral argument, this Court does not credit newspaper articles but this one would appear to have called for a vigorous denial if not true.

vent enforcement of this Court's September 9, 1970 permanent injunction.

In particular, as to the factual distinction between this case and the *Communications Workers* case which mandate a different conclusion, plaintiff notes first that in the *Communications Workers* case the complaint and other relevant papers submitted on the original application for a temporary restraining order were clearly limited to the specific dispute involved therein, *see Communications Workers* at p. 47, whereas in the instant case the papers seeking the original restraining order and the papers involving the present contempt proceeding both were essentially predicated on alleged violations of the aforementioned federal statutes which make all strikes by government employees, regardless of purpose, illegal.

As a second significant factual distinction, plaintiffs note that the Second Circuit in the *Communications Workers* case was troubled by the absence of consideration or a *"quid pro quo"* for the broad and indefinite injunction to which the union had consented, *see Communications Workers* at pp. 47–48, whereas here the plaintiffs waived their right to claim substantial money damages for the losses incurred during the alleged 1970 slowdown and to pursue their motion to have defendants adjudicated in contempt of the Court's March 30, 1970 temporary restraining order. Moreover, as plaintiffs point out, the entry of the permanent injunction on September 9, 1970 arguably yielded a collateral benefit to defendant PATCO in influencing the Assistant Secretary of Labor for Labor Management Relations to reinstate PATCO as a representative of federal employees, under Executive Order 11491, after having been disqualified as such a representative on August 12, 1970, due to the alleged 1970 slowdown. Therefore, it is not an exaggeration

to say that PATCO may well have bargained for its very existence in consenting and entering into the permanent injunction in question and, in this regard, it is significant to note that the original August 24, 1970, draft of the final permanent injunction was prepared by the attorneys for PATCO and not the attorneys for the plaintiffs.

This Court finds these two basic factual distinctions to be valid and meritorious. Quite clearly absent from this case is the ambiguity of intent and absence of substantial consideration to support the broadly framed permanent injunction which so troubled the Second Circuit in the *Communications Workers* case. In the case at bar, the intent of the parties to make the 1970 permanent injunctions applicable to all subsequent strikes, slowdowns, stoppages or job actions is unmistakably clear, as is the valuable consideration surrendered by the plaintiffs in entering the stipulation. These factual distinctions alone might support the conclusion that the 1970 permanent injunction does presently "apply to restrain the conduct alleged against PATCO",[5] but the Court finds additional support for this conclusion in the legal distinctions between the instant case and the *Communications Workers* case.

Specifically, underlying the Second Circuit's decision in *Communications Workers* was the concern that the injunction at issue was not only founded on arguably ambiguous intent and insufficient consideration, but it directly contravened the underlying policy of Section 9 of the Norris-LaGuardia Act and the Supreme Court's decision in *Boys Markets, Inc. v. Retail Clerks Union, Local 770*, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970), on the use and limits of federal court injunctions in the context of labor-management disputes. Thus the

---

**5.** Indeed, Judge Mansfield, in his concurrence and dissent to the *Communications Workers* case, citing the "long line of cases holding that consent orders are to be interpreted and enforced as written even if they are overbroad." *Communications Workers*, at p. 54, noted that the permanent injunction in the case, even if otherwise vulnerable to attack under the Nor-

ris-LaGuardia Act, would be immune from such attack if entered upon the valid consent of the parties. *Id.* at p. 52. Thus the only question for the Court, Judge Mansfield concluded, was the intent of the parties as to the scope of the stipulated injunction. He favored a remand to the District Court for a hearing on this question.

Court questioned the enforcement of the consented to injunction in a situation in which, under the statute and case law cited above, the employer might not otherwise have been entitled to federal court intervention.

In the instant context, however, this Court is faced with the statutes cited above which prohibit federal employees from engaging in any strike which would support the permanent injunction at issue in this case. Indeed, for this Court to enforce the permanent injunction in the present context would merely reinforce a prohibition already clearly made by the aforementioned federal statutes.[6]

In response to this conclusion, defendants argue, in essence, that the statutes in question and the instant injunction are not necessarily co-extensive in their coverage and that the latter might well cover activity arguably not in violation of the former.

Assuming *arguendo* that, if placed side by side a court might not in the abstract construe the statutes to be as broad as the injunctive language, such construction would have no relevance in this case because the parties in 1970 by their stipulation agreed that they were to be co-extensive and agreed that the injunction was to be based on the statutes. In the last analysis, this is the determinative fact in this case.

That the parties understood and intended the prohibitions of the federal statute in question to be the essential basis for the injunction in question is evident from the express provision that the injunction could be vacated if Congress repealed the statutes or if the Supreme Court declared them to be unconstitutional. Neither eventuality

having occurred, this Court concludes that the injunction does presently "apply to restrain the conduct alleged against PATCO."

In summary then, this Court is convinced that the parties, in negotiating and executing the stipulation upon which the permanent injunction was entered on September 9, 1970, intended the same to be fully applicable to all future violations thereof by PATCO, that adequate consideration supported this stipulation and injunction, and that enforcement of it by this Court at this time is further supported by the statutory prohibitions of strikes by federal governmental employees. Accordingly, said injunction is still in full force and effect, and, in accordance with the stipulation between the parties, dated June 22, 1978, this Court deems PATCO to have disobeyed this injunction on May 25 and 26, 1978, and June 6 and 7, 1978, and orders PATCO to pay the plaintiff Air Transport Association of America the sum of $100,000, i. e., $25,000 for each daily violation of the 1970 injunction, as provided for in that injunction.

That normally would end the matter and it does except for some observations that this Court feels constrained to make in light of all of the facts and circumstances of this case. As Judge Judd said in the first of his opinions,[7] the federal statutes involved, 5 U.S.C. § 7311 and 18 U.S.C. § 1918, are "laws of the United States which it is my sworn duty to uphold". They are also laws which it is equally my sworn duty to uphold.[8] But more importantly, defendants, too, when they assumed their jobs as federal employees swore to adhere to them.

In this regard, on the oral argument on June 23, 1978, in this matter, counsel for

---

6. In addition, the decision and order of the Assistant Secretary of Labor for Labor Management dated January 29, 1971 reinstating PATCO as a representative of air traffic controllers directed PATCO and its officers, agents and representatives to cease and desist from:

> "calling or engaging in *any strike, work stoppage or slowdown* against the Federal Aviation Administration or any other agency of the Government of the United States, or *from assisting or participating in any such strike, or slowdown*." (Emphasis added.)

7. *Air Transport Association v. Professional Air Traffic Controllers Organization, supra,* 313 F.Supp. at 183.

8. It is also the sworn duty of the Attorney General to enforce these laws but for reasons not fathomable by this Court they have apparently yet to initiate any investigative or enforcement proceedings.

PATCO, in response to questions from this Court with respect to the conduct of PAT-CO and the air traffic controllers pending the decision of this Court, or any appeals therefrom, represented that "What you have by way of the stipulation by way of our presence here, and by way of the representations is that PATCO and the plaintiffs [sic the defendants] are going to comply with the law. Now, whether you believe that that's enough I don't think is so much a reflection on whether you believe me or the defendants but maybe is simply a reflection on the incapacities of the law itself." The Court accepted that representation as a representation that PATCO and the defendants were going to comply with the law which, as this Court has now held, prohibits the activity of which the plaintiffs have complained herein.

In connection with this promise to obey the law, the Court would like to gently remind the defendants that they are in no different position than any other employee of our federal government, including each and every federal judge in this country. All of us also are under the same strictures of the above-cited federal statutes and have taken identical oaths not to violate the same or to participate in any strike against the government. Were these laws and oaths not to be honored and upheld, anarchy and chaos would inevitably result.

Again as Judge Judd said in his opinion [9] (and this is particularly true in the case of the defendants), "One of the reasons for the federal statute against strikes by federal employees is that the employees are performing an essential service, for the benefit of the public, and also for the segment of the public which the particular employees serve." In addition to the essential public services which the defendants provide, they are, I am sure, mindful of the fact that they have the lives of many thousands of people in their hands on each and every one of their working days. The Court does not even wish to entertain the notion at this time that one would wilfully trifle with such awesome responsibility in such a way as might possibly jeopardize the lives of one or more members of the innocent traveling public. Moreover, I am sure I need not remind the defendants that it is not solely the "airlines fuel" that is being burned, but precious fuel needed not only for our national defense but for the very health and livelihood of millions of their fellow countrymen.

Stated in another way, government employment is a privilege which carries with it in many cases, including this, awesome responsibilities. If one undertakes such responsibilities, one has a sworn obligation to fulfill them. If defendants are dissatisfied with the conditions of this undertaking, the solution, failing negotiations or persuasion, is to seek other employment, not to engage in or encourage conduct which violates the law and their sworn oaths at the expense of and possible endangerment to the lives of innocent people and the nation as a whole.

SO ORDERED; settle judgment on notice.

---

9. *Air Transport Association v. Professional Air Traffic Controllers Organization, supra,* 313 F.Supp. at 183.