**AIR TRANSPORT ASSOCIATION OF AMERICA (ATA), et al., Plaintiffs,**

v.

**PROFESSIONAL AIR TRAFFIC CONTROLLERS ORGANIZATION (PATCO), et al., Defendants.**

**No. 70 Civ. 400.**

United States District Court,
E. D. New York.

June 18, 1981.

Poletti, Freidin, Prashker, Feldman & Gartner, New York City, for plaintiffs.

E. R. Korman, U. S. Atty., Brooklyn, N. Y., by Igou M. Allbray, Asst. U. S. Atty., Robert J. Freehling, Sol. Federal Labor Relations Authority, Washington, D. C., as amicus.

Leighton, Conklin, Lemov, Jacobs & Buckley, Chartered, Washington, D. C., by Richard J. Leighton, Scott D. Andersen, Neal Goldfarb, Washington, D. C., Leaf Duell Drogin & Kramer, by Martin N. Leaf, New York City, for Professional Air Traffic Controllers.

## MEMORANDUM AND ORDER

PLATT, District Judge.

On September 9, 1970, plaintiff Air Transport Association of America (ATA) and defendant Professional Air Traffic Controllers Organization (PATCO) entered into a stipulation of permanent injunction so ordered by the late Judge Judd of this Court, prohibiting air traffic controllers, who are federal employees, from engaging in strike activities in violation of 5 U.S.C. § 7311 and 18 U.S.C. § 1918.[1]

In the spring of 1978 PATCO was again before this Court, seeking a declaration that the 1970 injunction was not intended to have prospective application to strike activities after 1970. This Court held at that time that the 1970 injunction was still in full force and effect in 1978, and would continue to be so unless and until laws making strikes by federal employees illegal were either repealed or declared unconstitutional. *See Air Transport Ass'n et al. v. PATCO*, 453 F.Supp. 1287 (E.D.N.Y.1978). That judgment was subsequently affirmed on appeal. *Air Transport Ass'n et al. v. PATCO*, 594 F.2d 851 (2d Cir. 1978), *cert. denied*, 441 U.S. 944, 99 S.Ct. 2163, 60 L.Ed.2d 1046 (1979). (*"ATA v. PATCO II "*).

Now, once again on the very eve of another threatened strike by air traffic controllers, PATCO seeks *vacatur* of the permanent injunction it consented to in 1970 for valuable consideration,[2] this time on the ground that the enactment in 1978 of the Civil Service Reform Act (the Act) 5 U.S.C. § 7101 *et seq.*, and with it the establishment of a Federal Labor Relations Authority (FLRA) with exclusive jurisdiction over unfair labor practice disputes involving feder-

---

1. *See Air Transport Ass'n v. Professional Air Traffic Controllers Organization*, 313 F.Supp. 181 (E.D.N.Y.), *rev'd in part sub nom. United States v. PATCO*, 438 F.2d 79 (2d Cir. 1970), *cert. denied*, 402 U.S. 915, 91 S.Ct. 1373, 28 L.Ed.2d 661 (1971) (*"ATA v. PATCO I "*) for background information.

2. As indicated, the permanent injunction was based upon stipulations of settlement pursuant to which the plaintiffs agreed to waive their claims for damages then estimated to be $50,-000,000, against defendants and withdrew their motion to adjudicate the defendants in contempt by virtue of violations of the temporary restraining order issued by this Court at the beginning of the action. PATCO also benefited in that the Assistant Secretary of Labor for Labor Management was in a position, following the settlement, to grant (and he did grant) certification to PATCO as a proper representative of the controllers. As the Court pointed out on the oral argument, PATCO's 1978 and present attempts to relieve itself of these settlements are nothing but an attempt to keep the "quid" and rip up the "quo" or "both eat [its] cake and have it". (George Herbert, *The Size*, Stanza 3; see also John Heywood *Proverbs* Part II, chap. 9 (1546)).

al employees has somehow divested this Court of subject matter jurisdiction over this lawsuit.

It is the position of the ATA that those enactments have not divested the Court of the subject matter jurisdiction which all sides concede it had in 1970 and 1978. This position is supported as well by the Department of Justice, the Department of Transportation, its subagency the FAA, the Office of Personnel Management and by the FLRA itself, who were invited by the Court as *amici* to file briefs on the issues raised in PATCO's motion.

For the reasons set forth below, we hold that this Court retains subject matter jurisdiction over this action and that the 1970 injunction continues in full force and effect.

## I

The complex procedural history of this action from its inception through the 1978 proceedings is set forth in detail in this Court's prior opinions, *ATA v. PATCO I and II*, 313 F.Supp. 181, and 453 F.Supp. 1287, and in the unpublished opinion of the Second Circuit affirming the latter decision. Familiarity with all the facts and circumstances surrounding this eleven year-old dispute is assumed for purposes of this opinion. There is only one essential, unchanged fact that bears repeating here: strikes by federal employees continue to be illegal, 5 U.S.C. § 7311, and indeed criminal, 18 U.S.C. §§ 1918 and 2.[3]

## II

PATCO moves for *vacatur* of the injunction under Fed.R.Civ.P. 60(b)(5) which states in pertinent part that

> On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons. . . .
>
> (5) . . . it is no longer equitable that the judgment should have prospective application . . . .

Therefore, the principal inquiry we need make here is whether it is no longer "equitable" to enforce the terms of the 1970 stipulation and injunction in which the ATA relinquished, *inter alia*, its substantial claims for damages against PATCO, in return for which PATCO "relinquished" its "right" to strike in violation of federal law.

It is hornbook law that if a court lacks subject matter jurisdiction at the outset of a lawsuit, all decrees, judgments, orders, etc., of that court, and, for that matter, all appellate decisions in the action are a nullity. *See* C.A. Wright, *Federal Courts*, ch. 2 and cases cited therein (2d ed. 1970); Fed.R.Civ.P. 12(h)(3). That is not the situation we have before us in this case. All sides agree that this suit was properly brought in this District Court in 1970. We also note at the outset that as a general rule federal jurisdiction properly obtained *ab initio* in an action remains unaffected by post-commencement changes. *See generally F.D.I.C. v. Tisch*, 89 F.R.D. 446 (E.D.N.Y. 1981), and cases cited therein. Therefore,

---

**3.** Section 1918 of 18 U.S.C. provides in pertinent part that:

> Whoever violates the provision of section 7311 of title 5 that an individual may not accept or hold a position in the Government of the United States or the government of the District of Columbia if he—
>
> \* \* \* \* \* \*
>
> (3) participates in a strike, or asserts the right to strike, against the Government of the United States or the government of the District of Columbia;
>
> \* \* \* \* \* \*
>
> shall be fined not more than $1,000 or imprisoned not more than one year and a day, or both.

Section 7311 of 5 U.S.C. (which, in paragraph (3), repeats the language of paragraph (3) above), is the civil counterpart of section 1918. In accordance with this latter statutory prohibition, all federal employees are required to take an oath, on assuming their positions, which among other things, forswears participation in a strike. *See* 5 U.S.C. § 3333.

Section 2 of 18 U.S.C. provides:

> (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
>
> (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

we are not dealing with an inherent fatal jurisdictional flaw; rather, we are squarely within the confines of Rule 60(b) which requires that it be inequitable not to release a party from the constraints of a prior decree. Furthermore, we need not address the question of whether this Court would have jurisdiction over the subject matter of this lawsuit were the suit filed today for the first time, although at this juncture there appears to be substantial merit to the position of the Department of Justice, et al., and indeed it is the position of the FLRA as well, that we would still have jurisdiction concurrently with that agency. That inquiry, however, goes well beyond what is necessary for a determination under Rule 60(b).[4]

The standards for determining when prospective application of a consent decree of permanent injunction has become "inequitable" were established in *United States v. Swift & Co.*, 286 U.S. 106, 52 S.Ct. 460, 76 L.Ed. 999 (1932). In that case the Court noted that

> [t]he inquiry for us is whether the changes are so important that dangers, once substantial, have become attenuated to a shadow ... Nothing less than a clear showing of grievous wrong evoked by new and unforeseen conditions should lead us to change what was decreed after years of litigation with the consent of all concerned.

286 U.S. at 119, 52 S.Ct. at 464 (Cardozo, J.). Whether Rule 60(b) should be used to relieve a party from a decree it no longer believes is equitable must necessarily be determined on a case-by-case basis. *See United States v. United Shoe Machinery Corp.*, 391 U.S. 244, 88 S.Ct. 1496, 20 L.Ed.2d 562 (1968).

The facts in this case do not permit a finding that "unforeseen conditions" have arisen that are causing PATCO to "suffer[ ]

hardship so extreme and unexpected as to justify us in saying that they are victims of oppression." *United States v. Swift & Co., supra,* 286 U.S. at 119, 52 S.Ct. at 464. In the first instance, the conduct enjoined in 1970 was, and still is, as we have stated above, against the law and indeed is a felony. No "grievous wrong" can conceivably result from continuing to enforce an injunction against PATCO compelling it to refrain from activity which remains illegal. Second, this is not a case where "dangers, once substantial" have subsided. Air traffic controllers perform an essential function, without whose services serious losses in both life and property can easily be imagined.[5] Despite this, and despite federal law to the contrary and despite prior express warnings by this Court, PATCO's officers are currently advocating another walk-out by its members. *See, e. g., The New York Times,* May 24, 1981; *The Washington Post,* June 11, 1981 (both quoting PATCO president Robert Poli threatening a strike with a June 22, 1981 deadline). Finally, the parties to the 1970 stipulation *did* foresee circumstances which *would* make continued application of the injunction "inequitable," to wit, the eventuality that either laws forbidding federal labor strike activity would be repealed or would be declared unconstitutional. Neither of these circumstances has occurred at this writing.

PATCO's claim that by creating a new federal agency in the CSRA, 5 U.S.C. § 7101 *et seq.*, Congress intended to divest this Court, both retroactively and prospectively, of jurisdiction over the subject matter of this suit is a position neither supported by a reading of that Act nor by the FLRA's own view of the scope of its jurisdiction. Although the Act purports to assign exclusive jurisdiction to the agency in the first instance over unfair labor practices in the federal sector, *see* 5 U.S.C. § 7105, it

---

4. Similarly, PATCO's contention that recent decisional law has cast doubt on plaintiffs' right as a private party to obtain implied relief under federal statutes need not detain us here, principally because PATCO knowingly and voluntarily waived that issue (for the above indicated valuable consideration) in the settlement of

their lawsuit. Again we need not decide what if any merit there is to such contention in the event their suit were to be commenced today.

5. See discussion on this subject in *ATA v. PATCO II,* 453 F.Supp. at 1294.

is of crucial importance that strikes by federal employees are substantially more than merely unfair labor practices—they are crimes. There are other statutes, both criminal and civil, cited above, which coupled with the general federal question statute, 28 U.S.C. § 1331 continue to supply a basis for federal subject matter jurisdiction. Indeed, although we are not called upon to decide the question, this might be a case that presents such serious federal questions and so urgent a need for a uniform federal rule of decision as to warrant the foundation of jurisdiction on the federal common law. *See generally Sylvane v. Whelan*, 506 F.Supp. 1355 (E.D.N.Y.1981).

Furthermore, as counsel for the FLRA urged at oral argument, the integrity of the 1970 injunction would appear to be preserved via certain savings provisions in the CSRA. In particular, Section 902 of the Act, 5 U.S.C. § 1101 (Supp. III 1979) provides:

> No provision of this Act shall affect any administrative proceedings pending at the time such provision takes effect. Orders shall be issued in such proceedings and appeals shall be taken therefrom as if this Act had not been enacted.

We agree with the statement of the FLRA that "[a]lthough not literally applicable, this provision shows Congress clearly intended continuity of an injunction such as here involved." *See* Memorandum of Federal Labor Relations Authority in Response to Court's Request for Comment on Motion to Vacate Permanent Injunction, p. 3. The type of disruption that Congress hoped to avoid by that provision would occur were we to hold that Congress did not intend to uphold judicially-obtained decrees as well.

We find the ATA's observation, that PATCO's argument does not really go to the question of the Court's subject matter jurisdiction so much as to a question of procedure, compelling. PATCO's contention essentially is that now that there is an agency, which PATCO assumes to have "special expertise" in the field of federal labor relations, it should be relieved of the stipulation of permanent injunction to give that agency a chance to "do over" what this Court, on consent, did eleven years ago. Not only is that not a ground for *vacatur* under Rule 60(b), but so to hold would be a victory of form over substance.[6] PATCO is well aware that the FLRA has no authority to find in favor of the union on the question of a strike; strikes are still illegal. No new statutory procedures have changed what the ultimate result of this dispute will be. Congress clearly could not have intended parties whose disputes have already been resolved in the judiciary at a time when subject matter was (if not still is) properly found in the court to be required to reopen and relitigate those disputes in a different forum because of a subsequent statutory change. This is especially true where the underlying substantive issues have re-

---

**6.** At the oral argument PATCO advanced a number of positions that had little, if any, substance. For example, it suggested that this Court could not enforce its injunction because if it did it would be compelling the Government to accept back at work an individual who had violated 5 U.S.C. § 7311 by participating in a strike. In so arguing PATCO put the "cart before the horse". (John Heywood, *Proverbs* Part II, chap. 4 (1546)), so to speak, in that the injunction does not mandate an employee to be rehired but rather forbids any such person from "engaging in any strike . . . ." What, if anything, the Government chooses to do to individuals who go out on strike and thereby violate the law (and the injunction of this Court) remains to be seen. Suffice it to say, as this Court has previously intimated, that wilful violations of the law, if presented and proven, will not be countenanced by this Court.

Moreover, we feel constrained to note that PATCO's motion seemingly has something of an "academic" quality to it. As the plaintiffs have pointed out, Section 7101 *et seq.* of the Act does not prohibit strikes by individuals and thus may not be said to preempt this Court's subject matter jurisdiction to enjoin strikes by individuals in violation of 5 U.S.C. § 7311. In its final judgment dated October 20, 1972, as to the individual defendants herein, this Court enjoined each of them, "their agents and employees, and any other person or organization acting in concert with them . . . from in any manner . . . engaging in any strike (etc.) . . . ." Thus even if PATCO were to succeed on its present motion it would still be under the restraint of a concededly valid decree prohibiting it from doing what it seeks to do.

mained unchanged. So to find would be analogous to holding that if and when Congress acts (as it has threatened to do) to abolish the diversity jurisdiction of the district courts, all injunctions issued in suits where subject matter jurisdiction was based on diversity would have to be vacated and relitigated in the State courts. Unless expressly stated by a legislative body, no one would ever assume such a result to have been intended; *ergo*, such a result clearly could not have been intended by Congress here.

### III

One final word of caution may be necessary here. We have decided this motion promptly so that there could not be said to be any doubt about this Court's position on the issues raised by PATCO at this time. As we did in 1978, we feel constrained gently to remind PATCO's members of the oaths they have taken (along with many other individuals in government service) to uphold "the laws of the United States" and not to participate in any strike against the government. It is no secret as the Court pointed out in the oral argument that there are many, many individuals in government service who feel (and perhaps justifiably) they are grossly underpaid and mistreated but that is no excuse for violation of the law and one's oath. Our nation's security and safety rests in the hands of her faithful servants. Unlawful conduct on their part may not be condoned. (Reread 453 F.Supp. at 1293–94).

### IV

In summation we hold that PATCO has not met its burden of showing that to hold it to the terms of the 1970 injunction has become inequitable under Fed.R.Civ.P. 60(b). Accordingly, PATCO's motion for *vacatur* must be, and hereby is, denied.

SO ORDERED.

UNITED STATES of America

v.

Joseph WRIGHT, et al.*

Crim. No. 80–296.

United States District Court,
E. D. Pennsylvania.

June 18, 1981.

---

* U.S. v.: Lafferty (John) (80–293); Brown (Francis) (80–292); Josaphovitch (David) (80–295); Lafferty (William) (80–294); Gilbert (Kryan) (80–261); Devine (Michael) (80–262); Egger (Patricia) (80–263); McKeown (Ann) (80–264); Sullivan (Margaret) (80–269); Hollywood (Rose) (80–274); Hasson (Lorraine) (80–325); Marchesano (Carol) (80–326).

Walter S. Batty, Jr., Daniel B. Huyett, Stephen V. Wehner, Lynell N. Staton, Asst. U. S. Attys., Philadelphia, Pa., for Government-appellees.

Anna Durbin, Edward Weiss, Donald G. Joel, Philadelphia, Pa., for defendants-appellants.

Before LOUIS H. POLLAK and SHAPIRO, District Judges.

This opinion deals with thirteen appeals from judgments of conviction for criminal contempt, 18 U.S.C. § 401.[1]

---

1. The appeals of Joseph Wright (80–296), John Lafferty (80–293), Francis Brown (80–292), David Josaphovitch (80–295), and William Lafferty (80–294) are from judgments entered by

We sat together to hear arguments on certain issues of law which are common to most of the appeals: In post-argument consultation, we have reached agreement on those issues of law and our views are reflected in this opinion.

We have not, however, joined forces for the consideration and disposition of appellants' respective challenges to the sufficiency of the evidence adduced by the Government against each of them: Each of us will address those issues in separate opinions to follow.

## I.

Appellants were charged with criminal contempts, pursuant to 18 U.S.C. § 401, arising from their alleged violation, on June 3, 1980, of Judge Broderick's Order of April 1, 1980, prohibiting certain activity in the vicinity of the Whitman Park Townhouse project in South Philadelphia.[2] *Resident Advisory Board [RAB] v. Rizzo*, 425 F.Supp. 987, 1029 (E.D.Pa.1976) (Order), *aff'd as modified*, 564 F.2d 126 (3d Cir. 1977), *cert. denied*, 435 U.S. 908, 98 S.Ct. 1457, 55 L.Ed.2d 499 (1978).

Having executed a waiver of the right to trial by a district judge, each of the appellants was tried by a federal magistrate. The Government moved in advance of trial to have any sentences imposed limited to a maximum of six months' incarceration and/or a $500 fine. Appellants all demanded jury trials which were denied. The trials were thereupon conducted to the bench.

On appeal to this court, appellants do not argue that they had a constitutional entitle-ment to a jury trial. *Muniz v. Hoffman*, 422 U.S. 454, 476–77, 95 S.Ct. 2178, 2190, 45 L.Ed.2d 319 (1975); *Taylor v. Hayes*, 418 U.S. 488, 94 S.Ct. 2697, 41 L.Ed.2d 897 (1974); *In re Scott*, 605 F.2d 736, 738 (4th Cir. 1979). But they do assert certain statutory entitlements to a jury trial. Appellants also challenge the jurisdiction of magistrates to conduct trials of contempts, with or without a jury. Further, certain of the appellants contend that, even assuming the magistrates who tried them had jurisdiction, those magistrates should have recused themselves for the reason that they had already tried other persons charged with breach of Judge Broderick's April 1, 1980 Order. Finally, all of the appellants argue that the evidence presented was insufficient to support the verdicts. With certain exceptions relating to the sufficiency of the evidence, these issues are resolved against the appellants. However, we are constrained to reverse all the convictions for the reason that the waivers of district court trial executed by appellants were not in the form expressly mandated by Congress.

### Statutory Rights to Jury Trials

Appellants rely on 18 U.S.C. §§ 402 and 3691 in support of their argument that these cases should have been tried to a jury.[3] These statutes provide that, when the behavior charged as contumacious also violates a provision of the federal criminal code or state criminal law, the defendant is entitled to a jury trial unless the alleged contempt constitutes

> . . . disobedience of any lawful . . . order . . . entered in any suit or action brought

---

2. This project to build integrated low-cost housing has attracted much public attention. Judge Broderick has reviewed "the long history" of the litigation in *Resident Advisory Board v. Rizzo*, No. 71–1575 (E.D.Pa. December 19, 1980). The procedural history is summarized at p. 1117 of this Opinion.

3. Section 402 defines breach of a court order as "contempt" where such breach is also a federal or state crime; section 402 also provides that trial of such an alleged contempt take place in the manner prescribed by section 3691, which appellants look to as guaranteeing them entitlement to a jury trial.

---

Magistrate Edwin Naythons; and their appeals are to Judge Pollak. The appeals of Kryan S. Gilbert (80–261), Michael Devine (80–262), Patricia Egger (80–263), Ann McKeown (80–264), Margaret Sullivan (80–269), and Rose Hollywood (80–274) are from judgments entered by Magistrate Tullio Gene Leomporra; and their appeals are to Judge Shapiro. The appeals of Lorraine Hasson (80–325) and Carol Marchesano (80–326) are from judgments entered by Magistrate Edwin Naythons; and their appeals are also to Judge Shapiro. All appeals are pursuant to 18 U.S.C. § 3402.

or prosecuted in the name of, or on behalf of, the United States.